**K & S CONSTRUCTION, a Colorado Partnership, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 94–1010 C.**

United States Court of Federal Claims.

April 3, 1996.

---

**24.** Compl. at 85.

William L. Bruckner, Bruckner & Walker, San Diego, California, for plaintiff.

Dean L. Grayson, with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, Assistant Director Kirk Manhardt, Department of Justice, Washington, D.C., and Jim Kauble, Office of General Counsel, U.S. Department of Agriculture, for defendant.

## OPINION

WIESE, Judge.

Ten months after receipt of the final decision terminating its contract for default, plaintiff submitted claims to the contracting officer asserting entitlement to additional compensation because of increased contract costs incurred during the period of performance. The claims attributed these costs to design deficiencies in the Government's specifications and to delays in the processing and payment of change orders. In his letter acknowledging receipt of the claims, the contracting officer pointed out that the information submitted, though voluminous, was nevertheless lacking in detail. Plaintiff was invited to furnish additional evidence.

No additional information was submitted by plaintiff; neither, however, was any decision forthcoming from the contracting officer. On November 4, 1994, plaintiff filed its complaint in this court. The complaint brings into issue the claims left undecided by the contracting officer—it treats these as having been denied by operation of law—and it also

challenges the correctness of the default determination, claiming that the lack of progress that precipitated that event was, in fact, Government caused.

The case is now before the court on defendant's motion to dismiss plaintiff's challenge to the default termination for lack of timeliness. The contention is that that challenge was brought here more than twelve months after the default decision was issued and therefore beyond the limitations prescribed by section 10(a)(3) of the Contract Disputes Act, 41 U.S.C. § 609(a)(3) (1994). Inherent in the Government's motion is the further contention that finality of the default determination precludes the later assertion, by plaintiff, of any claims seeking an affirmative recovery other than for work that was accomplished, but not paid for, prior to the default determination. In essence then, the Government's motion puts into issue virtually the whole of plaintiff's complaint. Plaintiff opposes the motion.

The parties have been given an opportunity to brief the issues and to supplement their written positions with oral argument. We conclude that the Government's motion is correct as a matter of law.

### Facts

· On March 24, 1992, plaintiff, K & S Construction, was awarded a competitively-bid contract, issued by the Department of Agriculture, Forest Service, for construction, in accordance with Government-provided plans and specifications, of the Hell's Canyon Visitor Information Building located in the Wallowa–Whitman National Forest in the State of Oregon. Performance of the work did not go well. There were numerous disputes, some having to do with the adequacy of the specifications, others concerning the scope of work required, and still others involving the sufficiency and timeliness of the Government's responses to contract changes. As a result, the work did not proceed as scheduled.

Ultimately, the contracting officer decided to terminate the contract for default. The letter announcing this decision, issued April 27, 1993, reads in part as follows:

This contract is in default, based on your failure to complete the work within the required time. Based on this and your abandonment of the project, your right to proceed with work on this contract is terminated. Your failure to complete work under this contract is not excusable.

The letter went on to advise that the work would be reprocured and that the contractor would be liable· for all damages resulting from the failure to complete the work including excess reprocurement costs. The letter concluded by indicating that the decision to terminate was a "final decision of the Contracting Officer," an appeal of which could be taken either to the board of contract appeals "within 90 days from the date you receive this decision" or "you may bring an action directly to the U.S. Claims Court within 12 months of the date you receive this decision."

Some ten months later, February 28, 1994, plaintiff submitted a claim to the contracting officer asking for additional compensation to meet the costs of numerous problems it had encountered in its attempts to work with what its letter described as "disastrously defective plans and specifications" and "excessive unpreparedness" on the Government's part. The claim demanded $259,939.63 for additional costs incurred because of alleged defects in the contract documents; $35,608.30 was claimed as monies due for work completed but not paid for as of the date of termination, and $500,000 was identified as the amount for which the contractor expected to become liable as a result of the completion of the work by the surety. The contractor's claim, amounting at this juncture to $795,547.93, was amended two weeks later to include an additional demand of $124,605.64 to cover certain subcontractor claims.

The receipt of these claims was acknowledged by the contracting officer on April 22, 1994. The letter of acknowledgment noted that, because of the size and complexity of the claims, a final decision could not be issued within 60 days. However, the letter went on to say that issuance of a decision by July 31, 1994, was planned. As to the substance of the contractor's claims, the contracting officer had this to say:

The information submitted with your claim, although voluminous, lacks details. As was the case during contract performance, you have made numerous reference to defects, yet consistently fail to state what the defects were, and how the defects affected your work. I will make a final decision based on the information submitted. It is your responsibility to furnish evidence to support your claim.

Your claim is submitted under a total-cost method, rather than on a causal basis. Consequently, you are attributing all costs to the Government, regardless of inefficiencies on your part. Further you are, in essence accounting for the same costs two or three times. Much of the $500,000 you indicate as being claimed by the bonding company is to cover costs they incurred in paying subcontractors and suppliers for work you were already paid for. Then, in addition to this, you are asking for a balance of $35,608.30, which you say is owed for work under the contract. The bonding company took over and completed the project. The project is complete and all work paid for. In addition to the above amounts claimed you are also claiming additional money based on costs you incurred.

If you wish to furnish further evidence, please do so. Absent further information, I will make my determinations, based on the information submitted.

As earlier noted, plaintiff did not provide the contracting officer with any additional information to assist in the evaluation of its claims. It did, however, await the issuance of a contracting officer's final decision for approximately four months. Eventually, when no decision was forthcoming, the claims were brought here for resolution. Standing athwart the path to that resolution, however, is the Government's motion to dismiss.

### Discussion

■ The Government's case for dismissal of plaintiff's challenge to the default termination is straightforward: section 10(a)(3) of the Contract Disputes Act, 41 U.S.C. § 609(a)(3), allows a contractor a period of twelve months, measured from the date of receipt of the contracting officer's final decision on a claim, in which to bring an action on the claim in this court. Failure to meet the twelve month time period extinguishes the right to sue and renders the contracting officer's decision final. In this case, the contracting officer's decision announcing the default termination was received on May 3, 1993, while the suit challenging that termination was not brought here until November 14, 1994—nearly seven months beyond the last possible filing date. Thus, from the Government's point of view, this court no longer has power to act in the matter.

Not so, says plaintiff. Plaintiff contends that the twelve month limitations period applies only to final decisions on contract "claims" and a decision to terminate for default—the argument continues—is not a decision on a claim. In support of this position plaintiff relies on an earlier case in this court, *Gunn–Williams v. United States*, 8 Cl.Ct. 531 (1985), where the court expressed the view that a termination for default, unaccompanied by any monetary demand, did not constitute the assertion of a Government claim but, rather, amounted only to the exercise of an administrative right inherent in the contractual relationship. The predicate to a claim, reasoned the court, was the existence of a dispute and that, in turn, could not emerge until the Government took steps to pursue the remedies incident to a default termination—for example, demanding the contractor's return of progress payments.

Plaintiff goes on to say that this view of the matter—that a claim involves the assertion of a disputed right—is also reflected in the applicable procurement regulation, 48 C.F.R. § 33.201 (1994). That regulation reads in pertinent part as follows:

*Claim,* as used in this subpart, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.

Pointing to the word "seeking" in the above-quoted text, plaintiff emphasizes that a final decision announcing a default termination is not an action that readily fits with that word. The default declaration contains no element of demand or entreaty. Nor is it an action

that is conditional in nature. Rather, it is a unilateral pronouncement, effective and complete upon its making. In short, it "seeks" nothing. Therefore, the argument holds, there exists no claim.

We reject this argument. Subsequent developments in the law render the earlier case law supporting it no longer controlling. Two factors account for this result. First, is the decision in *Malone v. United States,* 849 F.2d 1441 (Fed.Cir.1988). In that case, the court of appeals flatly rejected the Government's contention that the boards of contract appeals lacked authority under the Contract Disputes Act to decide contractor appeals of default terminations when presented there without a monetary component. Such "naked" appeals, the Government had argued, involved demands for declaratory relief as opposed to demands for decisions on a claim.

The court of appeals ruled otherwise. A default termination, said the court, falls squarely within that language of the Contract Disputes Act, set out in section 605(a), which directs that "[a]ll claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer." *Id.* at 1443. As the court explained, a default termination satisfied these statutory requirements because "[t]he Government issues it by CO decision, and it is both adverse to the contractor and relates to the contract because it involves a determination that the contractor has failed to fulfill its contractual duties." *Id.* In short, the Government's action, being in derogation of the contractor's promise-backed expectations, rendered that action a Government claim.

It is important to note too that, in coming to its conclusion in *Malone,* the court of appeals was well aware of the much narrower perception of the term "claim" that had taken hold in the Claims Court. Significantly, however, that perception was seen by the appellate court as one shaped by the Claims Court's unique money-based jurisdiction rather than by any statutory requirements essential to the recognition of a claim under the Contract Disputes Act. In other words, the dimensions of a contract claim in the Claims Court stood apart from any requirements necessary to the validation of a claim under the Contract Disputes Act.

This last brings us to our second point—the enactment of the Federal Courts Administration Act, Pub.L. No. 102–572, 106 Stat. 4506. In that statute, Congress addressed—and corrected—the jurisdictional restriction that had inhibited this court from entertaining the full range of claims that might arise under the Contract Disputes Act. (That restriction, of course, was the requirement, embedded in our basic jurisdictional statute, the Tucker Act, 28 U.S.C. § 1491, that a suit in this court must involve a demand for money presently due). Thus, to the existing language of the Tucker Act which read "[t]he Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) [41 U.S.C. § 609(a)(1) ] of the Contract Disputes Act of 1978", Congress added the following: "including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 [41 U.S.C. § 605] of the Act." 28 U.S.C. § 1491(a)(2) (1994). By virtue of this change, the court's jurisdiction under the Tucker Act became fully compatible with the definition of a claim recognized in *Malone.*

These two developments in the law—the *Malone* court's affirmation that a default termination decision is a Government claim within the meaning of the Contract Disputes Act, and the Federal Court Administration Act's enlargement of this court's jurisdiction to accommodate contractor suits contesting such Government claims—puts beyond debate the question whether plaintiff could have brought an action in this court to challenge the default termination announced on April 27, 1993. By that date, a full and complete remedy was available here. Having failed to pursue that remedy within the time allowed, plaintiff is now foreclosed from contesting the contracting officer's decision.

Plaintiff disagrees with this conclusion. It contends that even if the court were to hold

that a default determination (when presented in the form of a contracting officer's written final decision) is a Government claim, that would not be enough to support a decision here in the Government's favor. Specifically, plaintiff argues that it is not the contracting officer's final decision on the default termination that identifies the relevant decision for limitations purposes. Rather, it is the contracting officer's "deemed" denial of the contractor's claims that is said to be controlling.[1]

Two arguments are offered in support of this position. To start with, plaintiff contends that, in order to contest the default termination in court, it first was obliged to challenge that action at the administrative level, that is, present its claims to the contracting officer. The other argument is a take-off from the first: even if the submission of claims to the contracting officer were not a prerequisite to suit here, nevertheless, the submission of those claims amounted, in substance, to a request for reconsideration of the default termination decision and, correspondingly, suspended the limitations period applicable to the appeal of that decision until the request for reconsideration was resolved. Pursuant to each of these arguments then, plaintiff sees July 31, 1994, as the starting date for the twelve-month period in which to bring an action contesting the default termination in this court.

We find neither of these arguments persuasive. The first relies upon the Tucker Act, in particular the language that was added in 1992 extending the court's jurisdiction under the Contract Disputes Act to include "dispute[s] concerning termination of a contract . . . and other nonmonetary disputes on which a decision of the contracting officer

has been issued under section 6 of that Act." 28 U.S.C. § 1491(a)(2).

Plaintiff reads the quoted words as empowering the court to hear a suit contesting a contract default termination only when that suit is presented here in the form of a contracting officer's final decision on a "dispute." And to plaintiff, a dispute signifies more than just a contracting officer's unilateral determination of default. Rather, it implies that the default determination was formally contested by the contractor at the administrative level. Not until such a challenge occurs, argues plaintiff, can it be said that a dispute exists.

We disagree with this argument; it misreads the statutes involved. We note at the start that Section 6 of the Contract Disputes Act (41 U.S.C. § 605)—the section referred to in the language that was added to the Tucker Act in 1992—uses both the terms "claim" and "dispute" in referring to matters over which the contracting officer is given decisional authority. Significantly, however, neither Section 6, nor any other section of the Contract Disputes Act, provides a basis upon which to rest a distinction in meaning between these two words.

Nor, in fact, can we say a distinction was intended.[2] Despite its use of both terms—claim and dispute—what emerges from Section 6 as the final product of the decisional process there identified is "the contracting officer's decision on the claim." 41 U.S.C. § 605(b). And it is a decision on the "claim"—and that alone—that the Contract Disputes Act prescribes as the basis upon which further relief may be pursued, either before a contract appeals board or this court. *Id.*

1. Under the provisions of the Contract Disputes Act, a contracting officer's failure to enter a written decision on a claim within 60 days of its receipt, or within such longer time as the contracting officer has indicated reasonably to be necessary, "will be deemed to be a decision by the contracting officer denying the claim. . . ." 41 U.S.C. § 605(c)(5). Since, in this case, the contracting officer had planned to issue a decision on plaintiff's claims by July 31, 1994, but then failed to do so, plaintiff uses that date as the date by which its claims would be "deemed" denied by operation of law.

2. On the same point, we would note in passing that, in government contract law predating the enactment of the Contract Disputes Act, the terms "claim" and "dispute" were often used interchangeably notwithstanding the requirement then—as now—for a contracting officer's final decision on "the claim" as a prerequisite to the pursuit of further relief. *See e.g., Zidell Explorations, Inc. v. United States*, 192 Ct.Cl. 331, 427 F.2d 735 (1970). There is little reason to assume that the Contract Disputes Act meant to introduce a refinement in the use of those words that would modify their earlier meaning.

Given the central and singular importance which the Contract Disputes Act identifies with a contracting officer's final decision on a "claim," there is simply no room for the contention that the Tucker Act's reference to a contracting officer's decision on a "nonmonetary dispute" involves something other than a decision on a claim. The court therefore holds that the language added to the Tucker Act neither contemplates nor requires a second administrative go-round on a contracting officer's final decision in order to achieve what, to plaintiff, would then constitute a dispute. Plaintiff's argument is devoid of merit.

■ Moving on to plaintiff's second argument, the contention is that even if the submission of its claims to the contracting officer was not a jurisdictional necessity, nevertheless that action was the substantive equivalent of a motion for reconsideration that resulted in the tolling of the underlying appeal period.

We accept this argument, but only in part. That the claims plaintiff submitted in early 1994 were indeed requests for reconsideration, even though not labeled as such, seems clear enough. Those claims sought recovery for various elements of loss including costs attributable to alleged Government-caused delays and to extra work brought on by faulty specifications. Logically, such claims could not succeed unless the existing determination holding the contractor responsible for the contract's lack of progress were undone. By necessary implication then, the claims were requests for reconsideration, though perhaps presented in different guise.

The bigger question however, is whether the submission of these claims to the contracting officer had the effect of tolling the limitations period on the underlying claim (the default termination) in favor of a new twelve-month period that began at the time the requested reconsideration was denied. The answer is no.

■ The general rule is that where a motion for reconsideration is timely filed, the time for appeal runs from the date the motion is denied. *Dayley v. United States,* 169 Ct.Cl. 305, 308–309, 1965 WL 8250 (1965). In situations where no time marker is specified for the filing of such a motion, the law requires that the request for reconsideration be brought within a short period after the decision in question is announced. *Id.* at 308.

■ Whether this tolling principle is applicable to final decisions of a contracting officer is an issue the court of appeals has not yet addressed.[3] Nor need we address it here. Rather, it is enough to point out that plaintiff waited nearly ten months before asking the contracting officer to reexamine the default decision. That cannot be considered a timely request for reconsideration. *C.J. Langenfelder & Son, Inc. v. United States,* 169 Ct.Cl. 465, 472–473, 341 F.2d 600, 604–605 (1965). Indeed, to treat it as such would be tantamount to nullifying the limitations period specified by the Contract Disputes Act. We hold therefore that plaintiff's request for reconsideration was not timely brought.

■ The established rule is that where a motion for reconsideration has not been timely filed, the underlying appeal period is not enlarged unless the motion is considered on its merits. *Pfister v. Northern Illinois Finance Corp.,* 317 U.S. 144, 150, 63 S.Ct. 133, 137–138, 87 L.Ed. 146 (1942). Since the claims were not addressed on the merits— *i.e.,* no new decision was issued in respect to them—the time for bringing an action in this court to contest the default determination must be measured from the date plaintiff received that determination—May 3, 1993.

■ Plaintiff offers one last argument in favor of a different outcome. Plaintiff points out that, in his letter of acknowledgment, the contracting officer had indicated that he would issue a decision on the claims by July 31, 1994. That representation, plaintiff now argues, suspended the finality of the termination for default decision—"withdrew the ... decision" is how plaintiff also puts it— and, simultaneously, established the basis for

---

**3.** The tolling principle does apply to decisions of the boards of contract appeal and to the 120–day period allowed by the Contract Disputes Act for the appeal of such decisions. *Precision Piping, Inc. v. United States,* 230 Ct.Cl. 741, 743, 1982 WL 25173 (1982).

a new limitations period to commence upon the issuance of a new decision.

This too is an argument the court cannot accept. Nothing set forth in the contracting officer's letter warrants the conclusion that the decision expected to be entered on the contractor's claims was intended to take the place of the earlier-issued termination for default decision. Clearly, there were no words to that effect in the contracting officer's letter. Nor would it be reasonable to assume the contracting officer had such a purpose in mind. For that assumption to gain a foothold here, the facts, at a minimum, would have to show that the contracting officer saw enough in plaintiff's claim data to consider taking a second look at the default question.

But that was hardly the case. Indeed, what the contracting officer saw were claims that repeated their earlier shortcomings—they lacked specificity—and that exhibited obvious flaws in their pricing. Plainly, it was not without purpose that the contracting officer invited the contractor's submission of additional information. That invitation was a clear signal that the claims, as they then appeared to the contracting officer, offered little ground for reconsideration of the default determination. For these reasons, the court cannot subscribe to the argument that the contracting officer, in stating his intention to address plaintiff's claims in writing, was also committing himself to a reexamination of the original default decision. The default decision was never withdrawn.

To sum up: first, plaintiff's right to challenge the contracting officer's default determination in this court did not require it initially to contest that determination before the contracting officer; second, plaintiff's claims, to the extent they present demands whose factual premises are inconsistent with the contracting officer's default determination, constitute, in substance, an untimely request for reconsideration of that determination; third, the final decision announcing the default termination was never withdrawn by the contracting officer in anticipation of the issuance of a new decision; fourth, no new decision was, in fact, ever issued by the contracting officer; fifth, and last, the motion

for reconsideration was denied as a matter of law.

### Conclusion

Based on the considerations discussed in this opinion, plaintiff's time for bringing an action in this court to contest the default determination must be measured from the date plaintiff received that determination—May 3, 1993. Since plaintiff's challenge to that determination was not filed here until November 14, 1994—a date well beyond the twelve-month period provided by the Contract Disputes Act—it comes too late. Defendant's motion to dismiss plaintiff's challenge to the default termination is therefore granted.