EDUCATORS ASSOCIATES,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 96–402C.

United States Court of Federal Claims.

Sept. 23, 1998.

Mark J. Ivandick, Clarksville, Tenn., for plaintiff.

Franklin E. White, Jr., Washington, D.C., with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, and Assistant Director Joseph A. Kijewski, for defendant.

## ORDER

MOODY R. TIDWELL, III, Senior Judge.

This is a government contracts case in which plaintiff seeks an equitable adjustment to the contract price (or, in the alternative, reinstatement of the contract) on two separate claims: (1) defendant wrongfully terminated the contract for default; and (2) defendant negligently prepared the bid documents and grossly underestimated its requirements under the contract. Defendant moves to dismiss the first claim for lack of subject matter jurisdiction; it moves to dismiss the second on summary judgment. Both of defendant's motions, now before the court, are allowed.

### BACKGROUND

In October 1992, plaintiff was awarded a fixed-price requirements contract to provide test examination services to the Department of the Army and operate testing centers, learning centers, and computer assisted instruction centers at Fort Campbell, Kentucky. The contract was for one year, beginning in November 1992, with the next four years renewable at one-year options. Plaintiff performed the base year, one option year, and two months of the second option year before the contracting officer terminated the contract for default effective January 1, 1995.

The contracting officer's termination notice stated, "this is the final decision of the Contracting Officer." (Compl.Ex. 6) The notice also informed plaintiff of its right to appeal to the Board of Contract Appeals or the United States Court of Federal Claims and set forth the appropriate time periods for appeal. On March 9, 1995, plaintiff filed with the contracting officer a certified claim challenging the termination for default. Plaintiff amended the claim on March 16, 1995, to include claims for additional compensation for providing testing, copying, and transpor-

tation services in excess of the contract estimates.

The contracting officer did not reconsider plaintiff's contract termination claim. Instead, by letter dated July 10, 1995, the contracting officer referred plaintiff to the earlier termination notice dated January 1, 1995, and restated the time periods during which plaintiff could file suit in this court. Additionally, in this letter dated July 10, 1995, the contracting officer denied plaintiff's claims for additional compensation. As to these claims, the contracting officer stated, "this is the final decision of the Contracting Officer in regards to the claims concerning excess copier use, excess transportation and excess examinees." (Compl.Ex. 9) He also noted the times to appeal this decision.

Plaintiff filed suit in the United States Court of Federal Claims on July 8, 1996. Defendant subsequently filed a motion to dismiss plaintiff's claim for wrongful contract termination due to lack of subject matter jurisdiction, arguing that plaintiff filed its claim too late under the Contracts Disputes Act. Judge Robinson heard oral arguments on February 24, 1997, but did not issue an order at that time, instead, allowing the parties an opportunity to settle the case.[1] Settlement discussions, however, failed, and the case was transferred to Judge Tidwell. Defendant then filed a motion for summary judgement on the remaining claims for excess costs. This court now issues an order on both defendant's motions.

### DISCUSSION

#### I. Motion to Dismiss

 In considering defendant's motion to dismiss for lack of subject matter jurisdiction, the court must accept as true any undisputed allegations of fact made by the non-

---

1. Defendant contends, in its motion for summary judgment, that "the Court issued a bench ruling granting the Government's motion to dismiss, in part." (Def. Mot. Summ. J. at 2.) Review of the transcript, however, indicates that the judge issued no such order. Instead, the judge merely suggested, albeit strongly, that dismissal "would be my ruling in the mater (sic)." (Tr. at 18.) The judge suggested that the parties "come to some reasonable understanding on this so that the case can be completely disposed of" via stipulation of dismissal. (Id.) Again, the judge stated, "I won't issue a decision in this case, because obviously if you can settle it, and you can get a stipulation for dismissal, that is all the Court would need." (Tr. at 19.) Since neither an order nor stipulation of dismissal has been entered in this case, this court now considers defendant's motion to dismiss in addition to its motion for summary judgment.

moving party. *See Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). The non-moving party then bears the burden of establishing jurisdiction. *See id.* at 748. Only contested facts relevant to subject matter jurisdiction must be decided by the court. *See id.* at 747. "Although the court must generally assume unchallenged facts are true when deciding [its jurisdiction], the court is not required to accept plaintiff's framing of the complaint." *Lewis v. United States,* 32 Fed.Cl. 301, 304 (1994) (citations omitted), *aff'd,* 70 F.3d 597 (Fed. Cir.1995). Rather, "the court should look to plaintiff's factual allegations to ascertain the true nature of the claims," as well as "to matters outside the pleadings." *Id.*

■ Jurisdiction in this case is based on the Contracts Disputes Act of 1978, 41 U.S.C. § 609(a), which allows plaintiff to directly appeal a final decision of the contracting officer to the United States Court of Federal Claims. *See* 41 U.S.C. § 609(a)(1) (1994). Plaintiff, however, must file suit within twelve months of receiving the contracting officer's final decision or the court no longer has jurisdiction over the claim. *See* 41 U.S.C. § 609(a)(3) (1994); *Seaboard Lumber Co. v. United States,* 903 F.2d 1560, 1562 (Fed.Cir.1990). The twelve-month period is measured from the date of receipt and not the date of actual notice. *See Borough of Alpine v. United States,* 923 F.2d 170, 172 (Fed.Cir.1991). A key issue in this case is whether plaintiff timely filed its complaint.

Defendant's argument, in challenging jurisdiction, is simply one of timing. Plaintiff received the contracting officer's final decision to terminate the contract via certified mail on January 4, 1995. Plaintiff did not file its complaint in this court until July 8, 1996, a year and a half later. Since plaintiff's complaint is six months too late, it must be dismissed for lack of jurisdiction.

Plaintiff, however, contends that the twelve-month time period does not begin to run until July 10, 1995, the date on which the contracting officer issued the final decision *after* plaintiff submitted its claim contesting termination. Plaintiff argues, in effect, that the horse must come before the cart. That is, the contracting officer cannot issue a final decision until plaintiff first files a certified claim with the contracting officer asking for relief. How, plaintiff asks, could the contracting officer issue a final decision on a claim when no such claim had been presented?

■ This court, however, rejects plaintiff's argument and holds that a default termination notice labeled as a final decision fulfills the statutory requirements of the Contracts Dispute Act and triggers the twelve month running of time in which plaintiff may file claim with this court. *See Malone v. United States,* 849 F.2d 1441, 1443–44 (Fed. Cir.1988); *K & S Construction v. United States,* 35 Fed.Cl. 270, 274 (1996), *aff'd,* 121 F.3d 727 (Fed.Cir.1997). The court reaches this conclusion for the following reasons.

In 1994, Congress amended our jurisdictional statute and expressly granted this court power to hear contract termination disputes irrespective of claims for money damages. *See* 28 U.S.C. § 1491(a)(2) (1994) (granting jurisdiction over claims "including a dispute concerning termination of a contract ... and other nonmonetary disputes on which a decision of the contracting officer has been issued"). Prior to this amendment, however, the federal circuit had already held that a contracting officers' decision to terminate the contract for default "falls precisely within the contours" of the Contracts Disputes Act and is immediately appealable even without first submitting a claim to the contracting officer. *Malone,* 849 F.2d at 1443–44. Later cases concur. *See K & S Construction,* 35 Fed.Cl. at 276 (holding language added to Tucker Act makes clear: plaintiff is not entitled to "a second administrative go-round on a contracting officer's final decision"). It follows, then, that if the court has jurisdiction over contract termination challenges when *no* certified claim is presented to the contracting officer, then whether the claim is presented first or last is irrelevant for the purpose of counting the twelve-month statutory period.

■ In considering plaintiff's claim challenging contract termination, plaintiff received the contracting officer's final decision on January 4, 1995. It is this date, and not the later July 10th date, that triggers the running of the statutory clock. Plaintiff had

until January 4, 1996, to file suit, but failed to do so. As a result, the court now lacks jurisdiction over the claim.

The court, however, retains jurisdiction over plaintiff's claims for excess testing, copying, and transportation expenses. As to these claims, plaintiff timely filed suit. The claims for excess costs were not subject to the contracting officer's final decision until July 10, 1995, and plaintiff filed suit in this court on July 8, 1996; this is clearly within the twelve-month period. These claims, however, are further subject to summary judgment analysis below.

## II. Motion for Summary Judgment

Plaintiff contends that it was required to administer twice as many tests, produce twice as many copies, and travel many more miles than defendant estimated its requirements would be under the contract.[2] This, plaintiff argues, generated additional costs for which defendant is liable. Defendant counters that plaintiff never performed more tests; any increase in quantity is merely due to a new counting method instituted during the first year of the contract. As to the excess copies and transportation costs, defendant asserts that plaintiff bears the risk of quantity variance since defendant prepared its estimates in a non-negligent manner.

Assuming, as plaintiff contends, that defendant's requirements increased, the question for the court is whether defendant negligently prepared the bid documents, or whether, in the absence of negligence, it grossly underestimated its testing, copying, and transportation requirements so as to render the resulting contract unconscionable. On this issue, defendant is entitled to summary judgment.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The court does not weigh the evidence; it only determines questions of law based upon undisputed facts. Disputes over facts which are not outcome determinative, however, will not preclude the entry of judgment. *See id.* When the moving party has met its burden of showing entitlement to judgment as a matter of law, the burden shifts to the non-moving party to provide facts establishing that a genuine issue for trial exists, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and the non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses, *see Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir.1975); *see also Willetts v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir. 1978).

■ In a solicitation for a requirements contract, the contracting officer must provide a realistic estimate of the quantity of goods or services to be procured under the contract. *See* 48 C.F.R. § 16.503(a)(1) (1997).[3] The estimate is not a warranty as to

---

2. The following chart summarizes plaintiff's comparison of estimated and actual counts:

| | Estimated Count | Actual Count (approx.) |
| --- | --- | --- |
| Tests Administered | 13,200 tests per year | 27,300 (1st yr: Nov.'92–Oct.'93) |
| | | 24,000 (2nd yr: Nov.'93–Oct.'94) |
| | | 2,500 (3rd yr: Nov.'94–Dec.'94) |
| | | **contract terminated Jan. 1, 1995 |
| Copies Provided | 52,000 during the contract | 126,000 during the contract |
| Transportation | 15 miles per day | 100 miles per day |

(Pl. Reply Def. Mot. Summ. J., App. at 2–3.)

3. Federal Acquisition Regulation 16.503, states, in pertinent part:

For the information of offerors and contractors, the contracting officer shall state a realistic estimated total quantity in the solicitation and resulting contract. This estimate is not a representation to an offeror or contractor that the estimated quantity will be required or ordered, or that conditions affecting requirements will be stable or normal. The contracting officer may obtain the estimate from records of previous requirements and consumption, or by other means, and should

quantity, *see Shader Contractors, Inc. v. United States,* 149 Ct.Cl. 535, 276 F.2d 1, 5 (1960), but instead serves as a "guideline as to the contract's magnitude and scope," *Datalect Computer Serv., Ltd. v. United States,* 40 Fed.Cl. 28, 35 (1997). Nonetheless, courts recognize that "contractors rely on the proffered estimates in formulating their bids," so impose upon the government a duty of "good faith and use [of] reasonable care in computing its estimated needs." *Medart, Inc. v. Austin,* 967 F.2d 579, 581 (Fed.Cir.1992). If the estimate is prepared in good faith and based upon information reasonably available to it at the time, then, ordinarily, the risk of variation in quantity falls on the contractor. *See id; Womack v. United States,* 182 Ct.Cl. 399, 389 F.2d 793, 801 (1968).

█ Courts have held that even great disparities between estimated and actual quantities do not afford plaintiff relief. *See Medart,* 967 F.2d at 581; *Clearwater Forest Indus., Inc. v. United States,* 227 Ct.Cl. 386, 650 F.2d 233, 240 (1981). Nonetheless, it cannot be said, as a matter of law, that such disparities preclude relief in all instances. *See Datalect Computer Serv., Ltd.,* 40 Fed. Cl. at 37; *Chemical Tech., Inc. v. United States,* 227 Ct.Cl. 120, 645 F.2d 934, 945 (1981). Courts grant relief when the government misled the contractor, *see Datalect Computer Serv., Ltd.,* 40 Fed.Cl. at 36 (government withheld information that it knew would affect its requirements), or when the government deliberately ignores material information in calculating its estimate, *see Chemical Technology, Inc.,* 645 F.2d at 945–46 (government did not notify bidders of potential occurrence that would have significantly affected its requirements). The overwhelming body of law, however, indicates that a mere disparity between the estimated and actual quantity—without more—is not enough to shift the burden to the government to prove the reasonableness of the estimating procedure. *See Medart,* 967 F.2d at 581; *Crown Laundry and Dry Cleaners, Inc. v. United States,* 29 Fed.Cl. 506, 519–20 (1993); *Clearwater Forest Indus., Inc.,* 650 F.2d. at 240.

base the estimate on the most current information available.

█ In the instant case, this court recognizes that plaintiff's presentation of quantity variance (if believed) shows a significant gap between the estimated and actual requirements. Plaintiff, however, must go further than merely point this out to the court in order to establish a genuine issue of material fact that defendant acted inappropriately. *See Medart,* 967 F.2d at 581. Plaintiff bears the burden of presenting evidence that the estimates were negligently prepared. *See id.* Here, plaintiff points to no evidence whatsoever to suggest negligent estimate preparation; plaintiff, instead, relies only on evidence of the quantify variance to support its claim. Such evidence is insufficient as a matter of law to step over the summary judgment hurdle.

This case is unlike those cited above in which the government withheld information from the bidders. Here, there is no evidence defendant knew of any information that would have affected its requirements. Even if the court were to conclude that defendant knew, prior to bidding, that a new counting method was to be instituted, this information would not have been material to the bidding process. The old method required plaintiff to count a three-part test as one test; the new method required plaintiff to count a three-part test as three separate tests. Even if defendant deliberately withheld this information, the fact that plaintiff would later be required to count the tests differently did not increase its workload. No matter how the tests were counted, plaintiff was still required to administer the same three-part test.

█ The court also recognizes that defendant acted reasonably when it calculated its estimates within the parameters of Federal Acquisition Regulation 16.503 and based its estimates on past requirements. *See* 48 C.F.R. § 16.503(a)(1) (1997); *see also Medart,* 967 F.2d at 582 (refusing to impose bright line rule requiring contractors in all instances to go beyond regulation). While relying on past requirements alone does not insulate the government from liability, *see,*

48 C.F.R. § 16.503(a)(1) (1997).

*e.g., Datalect Computer Serv., Ltd.,* 40 Fed. Cl. at 35–37, on the facts of this case, the government is protected. It is clear that "[t]he government's duty to provide reasonable estimates requires more when additional information is available upon reasonable investigation," *id.* at 37, but the government is not required to "search for or create additional information" beyond that which is reasonably available, *Medart,* 967 F.2d at 582. Here, the record does not even hint at additional information which defendant could have, or should have, considered in calculating its requirement estimates. To suggest defendant should have formed some other estimate in this case constitutes nothing more than mere speculation, a method which is strictly prohibited when soliciting government contract bids. *See Chemical Technology, Inc.,* 645 F.2d at 945 (contractor not required to engage in "clairvoyance or speculation").

■ The court also notes that, on the facts of this case, the disparity between estimated and actual testing quantity does not rise to the level of unconscionability. An unconscionable contract is one "which no man in his senses, not under a delusion, would make, on the one hand, and which no fair and honest man would accept on the other." *Hume v. United States,* 21 Ct.Cl. 328, 330 (1886), *aff'd,* 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889). To obtain relief, plaintiff must, again, show more than just variance in quantity; plaintiff must point, for example, to overreaching, unfair bargaining power, or unfair surprise. *See Glopak Corp. v. United States,* 851 F.2d 334, 338 (Fed.Cir. 1988); *Fraass Surgical Mfg. Co. v. United States,* 215 Ct.Cl. 820, 571 F.2d 34, 40 (1978). Here, plaintiff provides no evidence of unconscionability in the bargaining process or in the result. Plaintiff, a fully informed business enterprise, entered into a government contract that, by its very nature, assigns the risk of quantity variance to plaintiff. Even after defendant's requirements allegedly increased, plaintiff renewed the contract twice, never once objecting to the increased testing requirements and never once seeking adjustment in contract price. In fact, it wasn't until *after* defendant terminated the contract for default, some twenty-six months into performance, that plaintiff first complained. This court will not render the contract unconscionable when plaintiff, fully informed of the testing increases, renewed the contract twice with no objection. To do so inappropriately redistributes the risk that the plaintiff agreed to bear.

■ The parties raise an additional argument that is limited to transportation costs. Plaintiff contends that Mr. Faires, a contracting officer representative, authorized additional transportation expenses. Defendant contends that Mr. Faires did not have actual authority to approve such expenditures, and, therefore, the government incurs no liability. For the government to be bound, the person who enters into or modifies the contract must have actual authority. *See Janowsky v. United States,* 133 F.3d 888, 891 (Fed.Cir. 1998). Apparent authority, which is essentially the argument plaintiff makes, will not suffice to bind the government. *See Goolsby v. United States,* 21 Cl.Ct. 629, 631 (1990). *But see Janowsky,* 133 F.3d at 891 (recognizing that liability arises if government ratifies unauthorized act). The record is replete with evidence that Mr. Faires did not have actual authority to modify the contract, and plaintiff has not provided any evidence to the contrary.

■ Notwithstanding, the law discussing authority is inapplicable because the transportation expenses at issue did not necessitate contract modification. Pursuant to the contract terms, plaintiff was required to provide "transportation required to pick up and deliver publications, materials, and equipment used by the Testing Center, Learning Center, and CAI Center." (Def. Mot. Summ. J., App. at 20, Contract ¶ C.4.1.3.) Neither plaintiff nor defendant provides any evidence that the actual transportation provided constituted anything other than requirements under the contract. The record reflects the following: plaintiff was required "to pick up mail and to travel to locations around Fort Campbell, which exceeded Educator's courier requirements under the contract," (Pl. Reply to Def. Mot. Summ. J., App. at 3, Bruce Wilson Aff.); it was required to "make distribution runs for the Education Branch," (*id.*);

it was required to "pick up distribution for the Education Division which increased the mileage driven on a daily basis," (Pl. Reply to Def. Mot. Summ. J., App. at 6, Scott Wilson Aff.). This work is clearly within the broad scope of the contract requirements of picking up and delivering materials to the various education centers. Plaintiff's evidence suggests nothing more than it traveled more miles to perform the tasks required of it under the contract. Plaintiff may have logged more miles than estimated, but because the mileage was within the scope of the contract, authorization is moot.

As to whether or not plaintiff sufficiently proved its economic damages, this court need not decide as plaintiff's claims fail for the above stated reasons.

## CONCLUSION

For the reasons stated above, the court grants defendant's motion to dismiss plaintiff's claim challenging the contracting officer's decision to terminate the contract for default. Additionally, the court grants defendant's motion for summary judgment pertaining to plaintiff's claims seeking compensation for testing, copying, and transportation expenditures.

**IT IS SO ORDERED.**