ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Kostas Greek Food - Zorbas | ) | ASBCA No.  62213 |
| | ) | |
| Under Contract No.  KO190001 | ) | |

APPEARANCE FOR THE APPELLANT:  Mr. Georgios Kostas
               Owner

APPEARANCES FOR THE GOVERNMENT:  Scott N. Flesch, Esq.
               Army Chief Trial Attorney
               LTC Stephen M. Hernandez, JA
               Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE CATES-HARMAN ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

This appeal arises from an Army and Air Force Exchange Service contract awarded to Kostas Greek Food – Zorbas, to provide a mobile kebab food concession at U.S. Army Garrison Humphreys (USAG Humphreys; Humphreys) in South Korea. The Army moves to dismiss this appeal arguing that we lack jurisdiction because appellant seeks an extension of the contract; a remedy that we have no authority to grant. We agree, but find that our jurisdiction does not end there.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1.  Contract No. KO190001 was awarded on March 5, 2019, to Kostas Greek Food – Zorbas (appellant; contractor; Kostas) by the Army and Air Force Exchange Service, Korea Contract Office (Army; government) for a two year period with performance starting on March 15, 2019, of a mobile kebab food concession at Humphreys, Korea (R4, tab 1 at 1, 5).

2.  The contract required Kostas to obtain "all necessary permits and licenses" in compliance with applicable laws:

   9. PERMITS, LICENSES AND APPLICABLE LAWS

   Contractor warrants that all necessary permits and licenses
   have been obtained and that the merchandise, services,

supplies, and/or equipment provided under this contract are in compliance with applicable laws. Contractor agrees to comply with all federal and state security and breach laws, privacy laws and regulations that cover the collection and use of personal information or data.

(R4, tab 1 at 12)

3. The contract required Kostas to supply equipment:

EQUIPMENT, FURNITURE, AND MOVABLE TRADE FIXTURES (NOV 15).

. . . .

b. Concessionaire Furnished: Concessionaire will provide and install all the equipment, furniture and movable trade fixtures required by this contract. All concessionaire furnished property is subject to approval of the contracting officer.

(R4, tab 1 at 26)

4. Exhibit G of the contract required Kostas to supply a "Self-Contained Mobile Food unit" (food service truck) that meets commercial food industry standards (R4, tab 1 at 46).

5. The contract contained a "Termination" clause, stating, in part:

8. TERMINATION

Relative to termination of this contract, it is mutually agreed:

a. This contract may be terminated in whole or in part by either party immediately upon written notice to the other party in the event of breach of this contract by the other party.

(R4, tab 1 at 12)

6. Between March 6 and March 8, 2019, numerous emails were exchanged between the parties in which the contracting officer provided the contract award document and Mr. Georgios Kostas requested a time to discuss the contract (R4, tab 2).

2

7.  On April 16, 2019, in response to Mr. Kostas' email to the contracting officer seeking assistance in filling out forms to obtain a business license, the contracting officer responded the same day:

> Mr. Kostas,
>
> Our contract agreement is the only form that I or anyone at the Exchange completes.  When you submitted your proposal, you stated that you have taken into consideration on how to do business here in Korea and food sources.  It is your responsibility to get a business license.
>
> The contract commencement date was 15 March 2019 and I understand that we awarded the contract on 5 March.  Please let me know when will you commence service.[?]

(R4, tab 4 at 2)

8.  The Services Business Manager for the USAG Humphreys Exchange Service Office sent an email to Mr. Kostas on May 21 and again on May 28, 2019, asking to "let me know when your truck [will] be ready to get inspection" (R4, tab 8 at 1-2).

9.  The parties exchanged more emails from May 2019 through June 2019 concerning when the food service truck will be delivered at the base, whether the food service truck will be mobile or permanently installed, and utility access for electrical and water (R4, tab 8 at 1, 9-12).

10.  On June 19, 2019, the Services Business Manager sent an email to Mr. Kostas asking when he will commence performance (R4, tab 14 at 1).

11.  The same day Mr. Kostas replied to the Services Business Manager stating, "from my part i do everything i can to finish as soon as possible . . . I want also to start to provide my service the soonest possible.  As you know the paperwork from Korean goverment [sic] takes time."  (R4, tab 14 at 1)

12.  In response to Mr. Kostas' June 19 email, the Services Business Manager asked if the commencement start date can be amended from March 15, 2019, to July 31, 2019, and asked Mr. Kostas to provide when the food service truck will be ready for inspection, copies of certifications, and copies of food source information for the menus (R4, tab 16 at 1).

3

13. The next day, Mr. Kostas responded that he would like to commence work before July 31, 2019, but cautioned the food service truck has not arrived at the Incheon Port for inspection:

> I'll believe that i'll be able to start working earlier than 31st of July. Also, i want to start as soon as possible because this situation costs me too much money.
>
> . . .
>
> The food trailer is on the way to Incheon port. When it'll arrive, the Korean customs will contact me to pick it up and i'll bring it straight on Base for inspection[.]

(R4, tab 17 at 1)

14. Mr. Kostas sent an email dated August 13, 2019, to the contracting officer informing her that the food service truck has yet to clear South Korean customs and anticipates an inspection on/around August 30, 2019 (R4, tab 21).

15. By letter dated August 27, 2019, the contracting officer sent a cure letter to Kostas stating that it was to begin performance on March 15, 2019, later amended to July 31, 2019, which Kostas has failed to do. The cure letter directed Kostas to commence performance no later than September 8, 2019, and provide documentation to the contracting officer within 5 calendar days of actions it will take to preclude similar contractual non-compliance. The cure letter explains that failure by Kostas to comply with the contract may result in termination for default. (R4, tab 23)

16. The parties again exchanged numerous emails between August 27 to September 2, 2019, concerning the status of the food service truck, and the requirements for Kostas to supply the appropriate licenses and certifications to the contracting officer (R4, tabs 24 at 1, 25-26).

17. By letter dated September 23, 2019, the contracting officer terminated the contract for default, which stated Kostas failed to remedy the deficiencies highlighted

4

in the cure letter dated August 27, 2019, to timely provide South Korean working visas, and to commence work by September 2, 2019:

> Reference is made to Concession Contract No. KO190001 between Kostas Greek Food - Zorbas and the Army and Air Force Exchange Service (Exchange) for Mobile Kebab Food Concession at Humphreys, Korea, and my cure letter to you dated 27 August 2019.
>
> On 2 September 2019, your request to deliver the food trailer at Camp Humphrey [sic] on 3 September 2019 was denied because you did not provide the necessary legal documentations to operate your business in Korea, such as business license. You provided a business license on 10 September 2019, and informed me that you have submitted the working visa documents to the Korean government.
>
> You were afforded the opportunity to show that your failure to comply with the contract terms was beyond your control and without your fault or negligence. In view of the facts that you do not have a work permit and employee base application, I have determined that you failed to establish that your contract violations were beyond your control and were not the result of your fault or negligence.
>
> Under the provisions of Clause Number 8.a., Termination, Exhibit A, General Provisions, the contract is hereby terminated for default, effective at close of business 24 September 2019. Specifically, you failed to commence performance as required by clause number two (2), Contract Period of Schedule.
>
> The Exchange does not at present intend to exercise its option to buy your equipment.

(R4, tab 34)

18. Two days later Mr. Kostas acknowledged receipt of the termination and asked if the contracting officer will forward his appeal to the Board, or does he have to directly appeal to the Board, "do i have to send my appeal to you and you are going to forwarded

to ASBCA or can you give me the contact information of ASBCA to send my appeal dirctly [sic] to them with notification to you?" (R4, tab 35)

19. By letter dated October 2, 2019, but not received until October 7, 2019, Kostas appealed *pro se* to the Board the contracting officer's September 23, 2019 decision, "APPEAL OF CAMP HUMPHREYS EXCHANGE DECISION DATED 23 SEPTEMBER 2019 FOR CONTRACT No KO190001." The notice of appeal provides a historical perspective of the contract, reasons for Kostas' failure to commence work, and requests that it may continue the contract beginning November 10, 2019, "Therefore, I would ask you to accept my request to continue my contract No KO190001 with Camp Humphreys and starting date on November 10, 2019."

20. By email dated December 9, 2019, Mr. Kostas submitted Kostas' complaint consisting of a single page stating that he is "appeal[ing] the termination," to continue to work on the contract, and stating that he expects to receive a work permit in "40 days" (compl.).

21. By motion dated January 14, 2020, the government moved to dismiss the appeal for lack of subject matter jurisdiction "for failure to state a claim on which relief can be granted" as the Board "has no authority to grant injunctive relief" of an "extension of the Contract" (gov't mot. at 1, 4). The government argues that its motion is "dispositive of all the issues in the case" (*id.* at 1).

22. Following repeated Board Orders dated January 27 and March 2, 2020, providing Kostas an opportunity to respond to the government's motion to dismiss for lack of jurisdiction, Kostas responded in a letter dated March 5, 2020, containing a single paragraph stating that it has received its South Korean work permit and wished to continue to commence the contract. Attached to the March 5 letter was a notarized and English translated Republic of Korea short-term work visa for a "Georgios Kostas" with a 90 day validation range of February 2 to May 17, 2020. The Board accepted the March 5 letter as Kostas' response to the government's motion. (Bd. corr. ltr. dtd. January 27, 2019; Bd. corr. ltr. dtd. March 2, 2019; app. resp.)

<u>DECISION</u>

*1. The parties' contentions*

The government argues that, "[t]he Board has no authority to order injunctive relief. To the extent the appellant requests that this Board grant injunctive relief, an 'extension of the Contract,' (Compl.) the government moves to dismiss the appeal for failure to state a claim on which relief can be granted." (Gov't mot. at 4) Citing to *Texas Eng'g Sols.*, ASBCA Nos. 53669, 54087, 03-2 BCA ¶ 32,272, at 159,660, the

6

government argues, "[i]n response to an appellant's request for an order directing the government to reinstate a contract, the Board noted that, '[s]pecifically, the Board has neither authority nor jurisdiction to order a contract reinstated.'" The government quotes Kostas' notice of appeal, "accept my request to continue my contract No KO190001 with Camp Humphreys and starting date on November 10, 2019." (Gov't mot. at 4-5) The government notes that Kostas' complaint also requests that the Board reinstate and extend its contract with the government (gov't mot. at 5). The government argues that its "motion is well-founded and dispositive of all the issues in this case" and the Board "has no jurisdiction to grant specific performance or injunctive relief" citing to *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1270-71, *reh'g denied*, 186 F.3d 1379 (Fed. Cir. 1999); *Rig Masters, Inc.*, ASBCA No. 52891, 01-2 BCA ¶ 31,468; and *Versar, Inc.*, ASBCA No. 56857, 10-1 BCA ¶ 34,437 at 169,959 (gov't mot. at 1, 5).

2. *The Board lacks jurisdiction to hear claims of specific performance or injunctive relief*

It is the responsibility of appellant to establish the Board's jurisdiction. *Black Tiger Co.*, ASBCA No. 59189, 16-1 BCA ¶ 36,423 at 177,570 (citing *Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 748 (Fed. Cir. 1988)). We agree with the government that the Board has long held that it does not have jurisdiction to entertain injunctive relief and to grant specific performance to reinstate a contract. *Rig Masters, Inc.*, 01-2 BCA ¶ 31,468 at 155,379. Kostas' notice of appeal and complaint indeed requested that the Board accept its request to continue its contract with commencement to begin on November 10, 2019, and requested a contract extension (SOF ¶¶ 19-20). To the extent Kostas' notice of appeal and complaint can be read to seek injunctive relief or specific performance, such requests are beyond the jurisdiction of the Board. *See, e.g.*, *Versar*, 10-1 BCA ¶ 34,437 at 169,959; *Colonna's Shipyard, Inc.*, ASBCA No. 59987 *et al.*, 16-1 BCA ¶ 36,518.

Kostas' requests are forms of injunctive relief or specific performance of the contract. The Board lacks the authority to do either. *Applied Ordnance Tech., Inc.*, ASBCA Nos. 51297, 51543, 98-2 BCA ¶ 30,023 at 148,543; *Old Hickory Eng'g & Mach. Co., Inc.*, ASBCA No. 28663, 84-1 BCA ¶ 17,192 at 85,611 (the Board has neither authority nor jurisdiction to order a contract reinstated); *Texas Eng'g Sols.*, 03- 2 BCA ¶ 32,272.

Accordingly, the Board grants this part of the government's motion finding that the Board lacks jurisdiction to entertain Kostas request to reinstate the contract and grant a contract extension.

7

### 3. The Termination for Default

#### a. Did appellant properly appeal the termination for default?

A contracting officer's decision to terminate a contract for default is an immediately appealable government claim. *Indep. Mfg. & Serv. Companies of Am., Inc.*, ASBCA No. 47636, 94-3 BCA ¶ 27,223; *Malone v. United States*, 849 F.2d 1441, 1443 (Fed. Cir. 1988); *cf. Educators Assocs, Inc. v. United States*, 41 Fed. Cl. 811 (1998). Kostas submitted a letter *pro se* to the Board dated October 2, 2019, and demonstrated a clear intention to appeal the termination for default, by stating that it was "APPEAL[ING THE] CAMP HUMPHREYS EXCHANGE' DECISION DATED 23 SEPTEMBER 2019." (SOF ¶ 19) Kostas' "decision to represent itself is a legitimate business judgment, the consequences of which, whether good or bad, must be borne by appellant. This Board has always accorded *pro se* litigants leeway administratively, but the legal standards we apply must, of necessity, be the same for everyone." *Atl. Maint. Co.*, ASBCA No. 40454, 96-2 BCA ¶ 28,472 at 142,195.

Whether the October 2, 2019 notice, received on October 7, 2019, was meant for the contracting officer or the Board is of no consequence. Filing an appeal with the contracting officer can satisfy the Board's notice requirement. *Hellenic Express*, ASBCA No. 47129, 94-3 BCA ¶ 27,189 at 135,503 (citing *Yankee Telecomm. Labs., Inc.*, ASBCA No. 25240, 82-1 BCA ¶ 15,515, for the proposition that "filing an appeal with the contracting officer is tantamount to filing with the Board"). Adequate notice to the contracting officer shall be in writing, express dissatisfaction with the contracting officer's decision, and, manifest an intent to appeal the decision to a higher authority. *See, e.g., McNamara-Lunz Vans & Warehouses, Inc.*, ASBCA No. 38057, 89-2 BCA ¶ 21,636 at 108,856 (concluding that a letter stating that "we will appeal your decision through the various avenues open to us" adequately expressed the contractor's intent to appeal as a contractor can only "appeal" to the Board).

Here, the documentation provides a clear indication that Mr. Kostas intended to appeal the termination for default; we look no further than (i) Mr. Kostas email to the contracting officer sent shortly after the September 23, 2019 termination notice, and asking whether she will send his appeal to the "ASBCA" or will he have to send it directly to the Board (SOF ¶ 18); (ii) the October 2, 2019 communication where Kostas' filed *pro se* its notice of appeal to the Board stating "APPEAL OF HUMPHREYS EXCHANGE' DECISION DATED 23 SEPTEMBER 2019 FOR CONTRACT No KO190001" (SOF ¶ 19); (iii) and, the December 9, 2019 complaint stating that, "By letter dated October 2, 2019, I sent you my notice of appeal for the termination of the contract No KO190001 between me and Camp Humphreys. . . ." (SOF ¶ 20; compl.)

The Board liberally applies whether it has jurisdiction over a contractor's appeal of a termination for default. The Board has held that although the contractor appealed a contracting officer's decision assessing excess costs, the contractor may still challenge the validity of the termination for default if it did not appeal the termination for default decision. *Fairfield Scientific Corp.*, ASBCA No. 21151, 78-1 BCA ¶ 13,082; *Fulford Mfg. Co.*, ASBCA Nos. 2143, 2144, 6 CCF ¶ 61,815 (May 20, 1955).

Similarly, when looking to the requirement that notice has been furnished, the Board will take a liberal reading of a contractor's communications to the contracting officer in finding effective appeals. *See Thompson Aerospace, Inc.,* ASBCA Nos. 51548, 51904, 99-1 BCA ¶ 30,232 at 149,570. The primary purpose behind the notice of appeal is to provide the Board and the Government with notice of an impending appeal and that is why it must fulfill only the most minimal of requirements. *See also* ASBCA Rule 1(b). We find that the notice of appeal was filed within 90 days of the termination, and states clearly and unequivocally that it is appealing the contracting officer's termination dated September 23, 2019. (SOF ¶¶ 19-20) Kostas' historical explanation of the dispute and its request for the Board to reinstate the contract does not negate Kostas' request for the Board to hear the government's claim to terminate its contract. Accordingly, the Board possesses jurisdiction over Kostas' challenge to the termination for default and it is now the government's burden to prove, by a preponderance of the evidence, that the termination for default was proper. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 763 (Fed. Cir. 1987); *Walsky Constr. Co.*, ASBCA No. 41541, 94-1 BCA ¶ 26,264 at 130,624. Once the government has met its burden of demonstrating the appropriateness of the default, the contractor has the burden of proof that its failure to perform was the result of causes beyond its control and without fault on its part. *Int'l Elecs. Corp. v. United States*, 646 F.2d 496, 510 (Ct. Cl. 1981); *Composite Int'l, Inc.*, ASBCA No. 43359, 93-2 BCA ¶ 25,747 at 128,126; *Centurion Elecs. Serv.*, ASBCA No. 48750, 00-1 BCA ¶ 30,642 at 151,325.

> *b. Should the motion to dismiss be converted to summary judgment on the termination for default?*

In its motion, the government did not argue nor address the propriety of Kostas' termination for default (SOF ¶ 21). As the propriety of the default was not addressed by the government, and the government's assertion that its motion is "dispositive of all the issues in this case" (gov't mot. at 1), we can only surmise that the government believes the termination is not before the Board. Conversely, the government's contention that a disposition on the motion to dismiss resolves all the issues related to the appeal, could be construed as seeking summary judgment on the termination for default. Since we have found here that we have jurisdiction over the propriety of the termination, we must consider it to be the latter. While our precedent clearly supports converting a jurisdictional motion to dismiss to a motion for summary judgment, we are likewise at liberty to refuse to

do so where the facts and the briefing do not support it. *Tele-Consultants, Inc.,* ASBCA No. 58129, 13 BCA ¶ 35,234 at 172,994 (citing *Aries Marine Corp.*, ASBCA No. 37826, 90-1 BCA ¶ 22,484 at 112,846-47 (ruling it inappropriate to convert a motion to dismiss for lack of jurisdiction into motion for summary judgment); and *Thai Hai*, ASBCA No. 53375, 02-2 BCA ¶ 31,971 at 157,920-21 (considering the government's motion to dismiss as one for summary judgment where both parties treated it that way after discovery had been conducted), aff'd, 82 F. App'x 226 (Fed. Cir. 2003)). Before a determination can be made on whether to convert the motion to dismiss to a motion for summary judgment, we look to ASBCA Rule 7(c), directing us to Rule 56 of the Federal Rules of Civil Procedure (FED. R. CIV. P.) for guidance. FED. R. CIV. P. Rule 56(a) provides that for a motion for summary judgment to be granted, there shall be "no genuine dispute as to any material fact. . . ." Recognizing that dictate, summary judgment may be raised by the parties and the Court. FED. R. CIV. P. Rule 56(f)(3) permits a court to consider summary judgment on its own accord but only after identifying for the parties material facts that may not be genuinely in dispute, and after giving notice and a reasonable opportunity to respond. Appellant has not been provided with that opportunity. As the Board determined in *Tele-Consultants, Inc.* "the better approach is to leave it to the parties to address in the first instance whether they believe there are any genuine disputes of fact between them on any material issues." *Tele-Consultants, Inc.,* 13 BCA ¶ 35,234 at 172,994. Moreover, we are at the early stages of this litigation, prior to discovery being conducted. It is typical that the nonmoving party have an adequate opportunity to conduct discovery. Without such opportunity to conduct discovery, we will not proceed on a motion for summary judgement. *The Ryan Co.*, ASBCA No. 58137, 15-1 BCA ¶ 35,998; *Coronet Mach. Corp.*, ASBCA Nos. 55645, 56899, 09-2 BCA ¶ 34,306 at 169,464 (quoting *Envtl. Chem. Corp.*, ASBCA No. 54141, 05-1 BCA ¶ 32,938 at 163,176); *GAP Instrument Corp.*, ASBCA No. 55041, 06-2 BCA ¶ 33,375 at 165,458 ("an adequate opportunity for discovery must usually precede summary judgment") (citing *Burnside-Ott Aviation Training Ctr., Inc. v. United States*, 985 F.2d 1574, 1582 (Fed. Cir. 1993)). Accordingly, we will not convert the government's motion to dismiss to a motion for summary judgement and we defer any ruling on the propriety of the termination until such point as the issue has been properly presented, and appellant has had an opportunity to respond.

<u>CONCLUSION</u>

The Board grants the government's motion in part and denies in part. The Board lacks jurisdiction on appellant's specific performance and injunctive relief request. The Board has jurisdiction over the propriety of appellant's termination for default.

Dated: November 23, 2020

STEPHANIE CATES-HARMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62213, Appeal of Kostas Greek Food - Zorbas, rendered in conformance with the Board's Charter.

Dated: November 24, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

11