**VEPCO OF SARASOTA, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1532C.**

United States Claims Court.

July 8, 1992.

**640**

Nevin A. Weiner, Sarasota, Fla., for plaintiff.

Sandra C. McFeeley, Washington, D.C., for defendant.

## OPINION

NETTESHEIM, Judge.

This case is before the court on defendant's motion to dismiss for lack of jurisdiction due to a contractor's purported failure to file a timely complaint under the Contract Disputes Act of 1978 (the "CDA"), 41 U.S.C. § 609(a) (1988). Argument is deemed unnecessary.

## FACTS

Unless otherwise noted, the following facts are undisputed. On September 23, 1988, the Tampa Facilities Service Office ("FSO"), United States Postal Service (the "Postal Service"), awarded Contract No. 119986–88–V–0493 for construction of a post office in Osprey, Florida, to Vepco of Sarasota, Inc. ("plaintiff"). The contract required plaintiff to clear trees and other growth from areas designated for the building site, parking and loading facilities, and stormwater retention ponds. Section 02110 of the specifications detailed this site clearing work and stated: *"Extent* of site clearing is shown on drawings." The drawings, dated July 25, 1988, indicated that removal of approximately 50 trees was required and denoted the approximate location of those trees, as well as trees that were to remain on the site.

On November 23, 1988, plaintiff forwarded to the Postal Service's architect and engineer, Curry Smith Jaudon Architects, Inc. (the "A & E"), a letter from plaintiff's subcontractor, Chambers Construction Co., Inc., noting discovery of trees not shown on the site plans. Plaintiff indicated that, by November 28, 1988, it "would mark all trees in the building and parking areas as either indicated or not indicated on the drawings." On November 29, 1988, the A & E noted in its field report that it inspected the site to determine the extent of trees located within the building, paving, and drainage areas and that there were approximately 250 trees on the site that were not shown on the tree survey. Additionally, the A & E noted: "The Contractor will start removal of trees which are in the improved areas designated to be removed. They have been instructed not to remove undesignated trees until a determination can be made by Architect and Owner [the Postal Service] as to the size of trees to be removed." Plaintiff argues in brief that the next day after having completed a portion of the work it notified the A & E that further work could not proceed without authorization for added payment. Also in brief plaintiff maintains that on December 1, 1988, it was verbally instructed to proceed with the removal of all trees in the improved areas and to document time and equipment usage.

In a December 2, 1988 letter, the A & E informed plaintiff:

We have contacted the U.S. Postal Facility concerning the existing trees on site which do not appear on the tree survey or our construction documents. The Postal Facility has instructed our office that all trees within the building area, parking, driveways, sidewalks and retention and swale areas are to be removed.

We will schedule a site visit for the week of December 5, 1988 to verify locations of trees outside of the above mentioned areas which are to remain. You are also instructed to keep a log of all tree sizes removed that have not been

shown on the tree survey or construction documents.

On December 30, 1988, plaintiff submitted a request for modification of the contract to the Postal Service, attention Marilyn Wong–Wittmer. Ms. Wong–Wittmer was both Project Manager and a Contracting Officer's Representative. Plaintiff stated: "Per our previous conversations and your instruction to remove additional trees, we directed our site subcontractor to perform the work. Below is a request for modification for a portion of the work...." Plaintiff sought $7,147.43 and a time extension of 14 days for the removal of 375 trees not shown on the site plan provided by the Postal Service.

On December 28, 1988, plaintiff wrote to the A & E regarding a second issue relating to the contract. Plaintiff indicated that its electrical subcontractor had brought to plaintiff's attention the absence of any provision for electrical service to the irrigation well and the potable water well. Plaintiff noted that in reviewing the problem it was unable to find either a conduit indicated as going to the wells or breakers in the panel designated for supplying power to the wells. In a January 13, 1989 letter, the A & E informed plaintiff that "[c]ontract requirements are for complete and fully operable systems...." On January 25, 1989, after subsequent correspondence between the A & E and plaintiff disputing who was responsible for the electrical service at issue, plaintiff sent two letters to the A & E, attention Charles Jaudon. The letters itemized the costs for work relating to "additional electrical requirements" and "the required change of power of the potable well water pump." Plaintiff estimated the costs for these items to be $2,203.74 and $182.46, respectively.[1] In both letters plaintiff asked that the A & E advise plaintiff if the A & E wanted the work to be performed under a modification.

On January 26, 1989, an on-site conference took place. Those present included Contracting Officer Alvis A. Tucker, Ms.

Wong–Wittmer, Mr. Jaudon, and representatives of plaintiff. The notes of the A & E's field report stated the following, in pertinent part:

1. Meeting was requested by the Contractor to review his change order requests for tree removal, power for potable and irrigation well pumps, and misplaced box lobby and work area footings.
2. No agreement was reached regarding the three items in question, therefore the Contracting Officer will issue a letter stating his decision on these items.

On February 17, 1989, Contracting Officer Tucker issued two separate decisions. One denied plaintiff recovery for removal of the additional trees, and the other denied plaintiff recovery for providing electrical service for the two wells at issue. Plaintiff received the decisions on February 21, 1989. The decision relating to the removal of trees, stated that in response to plaintiff's letter of December 30, 1988, and per the on-site meeting of January 26, 1989, "it is the final decision of the Contracting Officer that the removal of trees on site to accommodate parking and building are the contractor's responsibility...." The decision relating to the electrical requirements for the irrigation well and potable water well stated that in response to plaintiff's January 25, 1989 request for compensation, "it is the final decision of the Contracting Officer that it is the contractor's responsibility to provide fully operable systems in the completion of the construction of a Post Office...." This decision referenced only the January 25, 1989 request for $2,203.74, not the request for $182.46. Both decisions concluded with a description of the appeal process for a contracting officer's final decision.

Plaintiff's Vice President, Gregory M. Pike, stated in his affidavit of April 2, 1992, the following:

Despite the seeming finality of the February 17, 1989 Contracting Officer's decisions denying Vepco's claim for $7,147.43 for tree removal and for

---

1. Defendant in its brief only mentioned the $2,203.74 cost for "additional electrical requirements."

$2,386.20 for electrical service, Al Tucker and Marilyn Wong–Wittmer indicated as early as February 1989 and afterwards that each claim would be reserved and reconsidered after a final accounting. Each of them led Vepco to believe that the February 17, 1989 letters were not to be regarded as final. Accordingly, Vepco understood the appeal time was suspended or inapplicable.

Affidavit of Gregory M. Pike, Apr. 2, 1992, ¶ 4.

On December 14, 1989, plaintiff executed a "CONTRACTOR'S RELEASE" for the project that expressly excepted claims relating to "Tree removal," "Well Electric," and "Foundation Design." Plaintiff provided a "breakdown for the tree removal" costs in a letter to the Postal Service, dated February 13, 1990.[2] The listed costs totalled $30,675.03. In a February 20, 1990 letter to the Postal Service, plaintiff provided a "Summary of Outstanding Claims."[3] In addition to the costs for tree removal, plaintiff listed costs of $2,203.74 for "Electrical for Irrigation Potable Well" and $2,085.84 for "Foundation Dimension Error."

Ms. Wong–Wittmer, in her affidavit of January 27, 1992, stated:

Other than the "exceptions" in the December 14, 1989 release, between the decision letters dated February 17, 1989 and February 20, 1990, there is no correspondence or other information in the Postal Service's files concerning Vepco's interest in either the tree removal or the electric service issues. I recall receiving several telephone calls from Greg Pike in which he expressed interest in pursuing an appeal of the tree removal, electric service, and other claims. I took no action as a result of the telephone calls and I am aware of none that Mr. Pike took.

Affidavit of Marilyn Wong–Wittmer, Jan. 27, 1992, ¶ 22. Additionally, Ms. Wong–Wittmer averred that she did not respond to the letters received from plaintiff on February 20, 1990.

On August 8, 1990, plaintiff met with representatives of the Postal Service, including Contracting Officer Tucker, Ms. Wong–Wittmer, and Mr. Jaudon, to resolve outstanding contract matters prior to closing out the project. The A & E's field report of the meeting notes the following:

Vepco's Summary of Outstanding Claims were [sic] received with results as follows:

1. Tree Removal/Disposal: Vernon Pike [Gregory Pike's father] stated that a number of trees over 12″ diameter not shown on tree survey had to be removed. Vepco will provide log of excess trees removed from improved areas. Charles Jaudon will research files for related correspondence and photos. A meeting will be scheduled with Vepco and Architect present in Marilyn's office on August 21, 1990 to resolve this issue.

2. Electrical Service for irrigation and Potable Wells: Al Tucker will obtain an additional opinion to substantiate his decision on this item. Vepco will be advised of the latest decision.

3. Foundation Errors: No dimensional errors exist on Construction Documents. The earlier decision of the Contracting Officer is valid. Vernon Pike stated that he would review documents and make a decision.

Ms. Wong–Wittmer further averred by affidavit: 1) At no time during the August 8, 1990 meeting, or on any other occasion, did she indicate to plaintiff that the time for appealing decisions would be suspended; 2) the "Summary of Claims" referred to by the A & E was an oral statement, not a document; 3) neither she nor Contracting Officer Tucker told plaintiff that plaintiff's tree removal claim would be reconsidered if it submitted a log; and 4) Contracting Officer Tucker did not offer to reconsider the electric service claim. In his affidavit Contracting Officer Tucker stated that confer-

---

2. Defendant asserts that the Postal Service received the letter by facsimile transmission on February 20, 1990.

3. Defendant asserts that the Postal Service also received this letter by facsimile transmission on February 20, 1990.

ring with colleagues to substantiate a decision does not constitute reconsideration of the decision.

On August 28, 1990, plaintiff met with Ms. Wong–Wittmer and Mr. Jaudon. The A & E's field report noted the following:

### TREE REMOVAL CLAIM CONFERENCE

1. Gregg Pike and Charles Jaudon provided site clearing photographs with keyed prints showing trees at various improved site areas.
2. Gregg stated that tree survey was over two years old at Bid time. There were more trees larger than 12″ in improved areas than shown on tree survey.
3. Additional fill required to level site in areas where additional trees removed.
4. Ten (10) days additional time required for extra tree removal.
5. Contractor is requesting $31,000.00 for additional tree removal.
6. Marilyn will review Tree Removal Claim, Electrical Service for Irrigation and Potable Wells Claim, Liquidated Damages with Al Tucker.

Marilyn will also evaluate interest charges for Modifications. A decision will be forthcoming from the Contracting Officer.

On September 11, 1990, the A & E sent a letter to Ms. Wong–Wittmer stating:

Unresolved items include:

1. Interest on Modifications. Marilyn will review this item and advise her decision.
2. Marilyn will review the tree removal claim with Al Tucker. A decision will be made by the Contracting Officer.
3. Marilyn will review electrical service claims for irrigation and potable wells. A decision will be made by the Contracting Officer.
4. Foundation error claims ·will not be reconsidered. Contracting Officer's earlier decision will stand.
5. A decision is required for disposition of Liquidated Damages.

Please advise should you require additional information.

On November 14, 1990, Contracting Officer Tucker wrote to plaintiff:

As requested, we reviewed our two previous decisions regarding the removal of trees and the electrical service to the irrigation and potable water well based on our recent meetings. We cannot reconsider our decisions because there was no new evidence presented to cause reconsideration. Our final decisions, as explained to you by letter on February 17, 1989 (both topics), which included your appeal rights, does not change.

Plaintiff received this letter on November 19, 1990. Contracting Officer Tucker asserted by affidavit that he did not meet with plaintiff on August 28, 1990, because he knew that plaintiff's time to appeal had expired and he did not want to agree to reconsider the decisions in the absence of a compelling reason to do so. He stated that Ms. Wong–Wittmer reported to him after the meeting that plaintiff had proffered no new information, and based on her report he determined that no grounds existed to reconsider the decisions.

Final payment on the contract was made pursuant to an authorization dated December 20, 1990. On October 11, 1991, plaintiff wrote to Ms. Wong–Wittmer:

As we have been unable to negotiate a settlement regarding tree removal and electric service at wells, we have analized [sic] the entire situation, including losses created by the Postal Service's failure to reimburse our sitework subcontractor for the tree removal, subsequently causing his contract failure, thus causing increases in subcontract costs of $48,507.50.

Attached you will find a comparison of the cost, with a claim summary.

Please review and call if you have any questions.

The attached claim summary listed costs of $30,675.03 for "TREE REMOVAL," $2,203.74 for "ELECTRICAL AT WELLS," and $58,791.09 for "PAVING/CURB LOSS." Contracting Officer Tucker re-

sponded to plaintiff's letter on November 4, 1991, stating:

> We have your letter of October 11, 1991. Since it contains no new information over or beyond that information we considered in arriving at our final decision, there is no reason for us to review this matter or issue a new final Contracting Officer's decision. Please note that our letter of February 17, 1989, was the final Contracting Officer's decision. We have previously stated this to you by letter dated November 14, 1990 and May 22, 1991.[4]

On October 22, 1991, plaintiff filed its complaint in the Claims Court.[5]

## DISCUSSION

Defendant requests dismissal of plaintiff's complaint, pursuant to RUSCC 12(b)(1). Count 1 of the complaint seeks compensation for the claims relating to the tree removal and the electrical service for wells. Count 2 seeks compensation for the claim relating to paving, curbing and striping. Defendant contends that the court lacks subject matter jurisdiction over both counts. Alternatively, with respect to Count 1, defendant requests dismissal of the count for failure to state a claim, pursuant to RUSCC 12(b)(4), because authority seems to be emerging, but is not yet definitive, to the effect that the CDA confers jurisdiction in the Claims Court over any CDA claim, so that failure to satisfy the Act's requirements for presenting cognizable claims goes to the merits and does not affect jurisdiction. This court will follow the current precedent, which is supported by authority over the last 10 years, in treating defendant's motion as jurisdictional.

The Supreme Court has set forth standards, reiterated by the Federal Circuit, that are applicable to defendant's motion.

[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader. " . . . [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted)). "If a motion to dismiss for lack of subject matter jurisdiction . . . challenges the truth of the jurisdictional facts alleged in the complaint, the . . . court may consider relevant evidence in order to resolve the factual dispute. . . ." *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988) (citations omitted). The party asserting jurisdiction "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence . . . [and] must be given an opportunity to be heard before dismissal is ordered." *Id.* at 748 (citations omitted). "If the[ ] facts [alleged in the complaint] reveal any possible basis on which the nonmovant might prevail, the motion [to dismiss for lack of jurisdiction] must be denied." *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988) (citing *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686).

### Count I

■ Defendant contends that plaintiff's appeal of Contracting Officer Tucker's final decisions of February 17, 1989, relating to tree removal and electrical service, was not filed within the 12–month period within which an appeal must be filed under the CDA. 41 U.S.C. § 609(a). Plaintiff asserts

---

4. Neither party included the May 27, 1991 letter in the record.

5. The parties submitted supplemental affidavits of Contracting Officer Tucker and Mr. Pike, dated April 29, 1992, and June 4, 1992, respectively. These affidavits proffer contradictory statements on several matters, including whether the Postal Service acknowledged that plaintiff was entitled to additional compensation or indicated that it would reconsider plaintiff's claims after a final accounting. They are not discussed in the body of the opinion since they serve merely to embellish the disputed facts that cannot be resolved on defendant's motion.

that after Contracting Officer Tucker issued the final decisions, the Postal Service agreed to review the decisions. According to plaintiff, the finality of the decisions was suspended, pending the contracting officer's ruling on reconsideration on November 14, 1990. Thus, plaintiff maintains that its complaint, filed on October 22, 1991, was a timely filed appeal under the CDA.

"[U]nless there is legislation to the contrary it is the inherent right of every tribunal to reconsider its own decisions within a short period after the making of the decision and before an appeal has been taken or other rights vested...." *Dayley v. United States*, 169 Ct.Cl. 305, 308 (1965) (citations omitted). "'[T]he period for appeal or review [under the CDA] does not begin to run until the disposition of a timely request for reconsideration, rehearing, or new trial, because such a request suspends the finality of the decision pending a ruling on the application....'" *Precision Piping, Inc. v. United States*, 230 Ct.Cl. 741, 743 (1982) (quoting *Dayley*, 169 Ct.Cl. at 309).

The parties do not dispute that Contracting Officer Tucker issued final decisions on the tree removal and electrical service claims on February 17, 1989, and that plaintiff received the decisions on February 21, 1989. The parties' disagreement is over whether plaintiff requested reconsideration of these decisions in a timely manner, thereby effectuating suspensions of the finality of the decisions.

Plaintiff's Vice President, Mr. Pike, stated that Contracting Officer Tucker and Ms. Wong–Wittmer indicated from February 1989 onward that the tree removal and electrical service claims would be reconsidered after a final accounting. Plaintiff did not submit any correspondence between the parties to substantiate this assertion. While Ms. Wong–Wittmer admitted that she received telephone calls from Mr. Pike on several occasions subsequent to issuance of the contracting officer's decisions and prior to plaintiff's submission of the claimed costs to her on February 20, 1990, her only comments regarding the calls were 1) that Mr. Pike expressed an interest in pursuing an appeal of the claims, 2) that she took no action as a result of the calls, and 3) that she was unaware that Mr. Pike took any action as a result of the calls.

Indications that plaintiff considered the claims unresolved, but not necessarily that the Postal Service agreed to reconsider the claims, are plaintiff's exception of the claims from the contractor's release for the project, executed on December 14, 1989, and plaintiff's submission of the claimed costs to the Postal Service on February 20, 1990. Defendant contends that these actions of plaintiff did not amount to a request for reconsideration of the claims. While these specific actions may not amount to a request for reconsideration, the Postal Service's subsequent willingness to review the claims in August 1990 reveals that at some point the Postal Service recognized that plaintiff had requested reconsideration of the contracting officer's decisions.

The A & E's field report for August 8, 1990, noted, with respect to "Outstanding Claims," that a meeting would be held to resolve the tree removal issue, that Contracting Officer Tucker would obtain an additional opinion to substantiate his decision on the electrical service claim, and that plaintiff would be "advised of the latest decision" on the electrical service claim. The A & E's field report for August 28, 1990, stated that Ms. Wong–Wittmer would review the tree removal claim and the electrical service claim with Contracting Officer Tucker. Finally, the A & E's September 11, 1990 letter indicated that Ms. Wong–Wittmer would review both claims with Contracting Officer Tucker and that he would make a decision on the claims. The accuracy of these comments by the A & E is supported by Contracting Officer Tucker's November 14, 1990 letter, wherein he stated 1) that "we" reviewed the decisions on the tree removal and electrical service claims and 2) that the decisions would not be reconsidered because no new evidence was presented to warrant reconsideration.

The actions of the Postal Service during the period of August through November are consistent with plaintiff's contention that the Postal Service agreed to reconsider the final decisions, dated February 17, 1989, after receiving a final accounting.[6] If the Postal Service considered that the Contracting Officer's February 17, 1989 decisions were definitive, it should have refused to review the decisions, as it refused to review the claim for "Foundation Errors." With respect to the foundation error claim, the August 8, 1990 field report stated that the contracting officer's earlier decision is valid, and the September 11, 1990 letter stated that the claim would not be reconsidered and that the contracting officer's earlier decision would stand. These are the same documents in which the A & E indicated that the tree removal and electrical service claim would be reviewed and that the contracting officer would issue a decision.

Count I of plaintiff's complaint alleges facts upon which the court could grant relief to plaintiff, and the court thus must deny defendant's motion to dismiss Count I. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686. The court could resolve a factual dispute on a motion to dismiss for lack of jurisdiction, but the record permits no definitive resolution. Plaintiff contends that Contracting Officer Tucker agreed to reconsider his final decisions of February 17, 1989. A contracting officer's agreement to reconsider his final decisions would suspend the finality of the decisions if the request for reconsideration were made in a timely manner. Plaintiff asserts that it requested reconsideration immediately after issuance of the decisions. Although Contracting Officer Tucker and Ms. Wong–Wittmer deny this assertion, the court, in ruling on a motion for dismissal of a complaint, must construe the allegations favorably to plaintiff. Contracting Officer Tucker's eventual review of his final decisions adds support to plaintiff's contentions that it had requested reconsideration and

that Contracting Officer Tucker had agreed to review the decisions after he received a final accounting, particularly because the A & E indicated that the foundation error claim would not be reviewed at the same time that it indicated that plaintiff's claims relating to tree removal and electrical service would be reviewed. Additionally, the court notes that Contracting Officer Tucker's letter of November 14, 1990, stating that his earlier decisions would not be reconsidered, is of little moment, in that time spent reviewing a request for reconsideration would suspend the finality of the decisions regardless of whether the contracting officer ultimately reconsidered the decisions. *Precision Piping*, 230 Ct.Cl. at 743 (a request for reconsideration suspends the finality of the decision pending a ruling on the application).

*Count II*

Defendant moved to dismiss Count II of plaintiff's complaint on the basis that the court lacks jurisdiction over the claim. Count II is a claim for compensation for additional costs of paving, curbing and striping that plaintiff contends resulted because of the Postal Service's delay in approving payment for the tree removal costs at issue. Defendant argues: 1) Plaintiff's letter of October 11, 1991, wherein the "Paving/Curb Loss" was made known to the contracting officer, does not contain all the essential elements of a CDA claim; 2) even if the letter could be construed as a claim, it lacks the required certification; and 3) even assuming certification was not necessary and that the letter was a valid claim, plaintiff filed its complaint prior to the expiration of the time which the contracting officer had to issue a decision on the claim.

Plaintiff, in its responsive brief to defendant's motion to dismiss, did not address defendant's request to dismiss Count II. Plaintiff asked solely that defendant's motion to dismiss Count I be denied. The

---

6. Plaintiff provided a final accounting to the Postal Service on February 20, 1990, which included costs for tree removal in the amount of $30,675.03. The initial claim letter by plaintiff listed costs of $7,147.43 and indicated that this amount was for only a portion of the work related to the tree removal claim.

only evidence in the record that relates to the paving, curbing, and striping claim is plaintiff's letter of October 11, 1991. The letter is insufficient as a CDA claim because it fails to request a final decision. *Sun Eagle Corp. v. United States*, 23 Cl. Ct. 465, 470 (1991) (order denying motion to dismiss). Because plaintiff offered nothing to support the Claims Court's jurisdiction with respect to this claim, Count II shall be dismissed.

## CONCLUSION

Based on the foregoing, defendant's motion is granted as to Count II and is otherwise denied without prejudice to renewal. Accordingly,

IT IS ORDERED, as follows:

1. Count II of the complaint is dismissed without prejudice for want of subject matter jurisdiction.

2. A status conference shall be held in lieu of the Joint Preliminary Status Report at 2:00 p.m. on Thursday, July 23, 1992, in the National Courts Building, 717 Madison Place, N.W., Washington, D.C. Counsel for plaintiff may participate by telephone conference call to be placed by the court. The parties shall be prepared to schedule a course of further proceedings.