**ARONO, INC., Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

**No. 98–704C.**

United States Court of Federal Claims.

June 13, 2001.

Gary L. Sweet,[1] Stuart, Florida, for plaintiff.

Marian E. Sullivan, Washington, D.C., with whom were Frank W. Hunger, Assistant Attorney General, United States Department of Justice, for defendant. John Ringhausen, Office of Regional Counsel, General Service Administration, Atlanta, Georgia, of counsel.

## OPINION

BUSH, Judge.

This matter is currently before the court on defendant's motion to dismiss plaintiff's claim for lack of subject matter jurisdiction. Plaintiff claims that defendant breached a contract for lease of space for the Social Security Administration ("SSA") and challenges the government's termination of the lease for default based upon constructive eviction. Defendant asserts that the court lacks jurisdiction over plaintiff's complaint because plaintiff failed to file its complaint in this court within the prescribed twelve-month statutory period under the Contract Disputes Act ("CDA"), 41 U.S.C. § 609(a)(3). In rejoinder, plaintiff contends that the contracting officer ("CO") reconsidered her default termination decision, thus suspending the finality of the decision until a later date.

---

1. As of May 16, 2001, *Alvin Friedman,* Washington, D.C., is attorney for plaintiff.

As such, plaintiff submits that, based upon the later date, plaintiff timely filed its complaint in this court. For the following reasons, defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), is denied.

## BACKGROUND

### I. Facts

On October 5, 1994, Arono, Inc. ("Arono") entered into a ten-year lease with the General Services Administration ("GSA") for the lease of commercial space for the SSA in Village Plaza Center, Port St. Lucie, Florida. In March 1996, for the first time, SSA brought to Arono's attention that there was an ongoing sewer problem and noxious odors associated with the septic system. Arono subsequently sought to rectify the problem by replacing the pumps related to the septic system. Despite Arono's efforts, SSA complained to GSA that the problem persisted.

On February 3, 1997, Pamela A. Burns, the contracting officer, sent a letter to Andy Russo, property manager for V.I.P. Real Estate, Inc. and Arono's senior company official with primary responsibility for the contract at issue. The letter details the effects of the septic odors on SSA staff, citing loss of staff, negative impact on employees' morale and health, and diminished service to the public, as well as a negative effect on SSA's public visitors. It also notes that SSA would possibly face workmen's compensation claims by the employees who believed they had been harmed. The letter further states that, although the term of the lease extended until January 2003, Arono's repeated and inexcusable failure to correct the sewage odors constituted sufficient grounds for early termination of the lease contract under the doctrine of constructive eviction. Ms. Burns informed Mr. Russo that the government intended to terminate the lease for default, without financial compensation to Arono. The contracting officer also stated that SSA anticipated moving from the space by July,

1997; however, SSA would finalize the specific date at a later time. Ms. Burns concluded the letter by stating that it was the CO's final decision and advising Arono that if it wished to appeal it must appeal the final decision to the Board of Contract Appeals within 90 days of receipt of the final decision or to this court within twelve months of receipt of the decision, pursuant to the CDA.

On February 7, 1997, Arono's counsel, Kenneth W. Fromknecht, II, sent a letter to Ms. Burns challenging the government's default termination and disputing the CO's claims about the odors persisting after Arono replaced the pumps that were a part of the septic system. In the letter, Mr. Fromknecht also indicated that damages would be approximately $310,458.14 based on the anticipated rent for the duration of the lease and depending on future developments, such as Arono's ability to re-let the premises. He closed by inviting the government to discuss the matter further.

On April 15, 1997, Arono submitted a claim to the contracting officer in response to the CO's February 3, 1997 final decision. Mr. Fromknecht, on behalf of Arono, indicated that Arono had brought the claim as an express prerequisite to filing in this court "despite the fact that [the CO's] February 3, 1997 action was framed as a Final Decision" and that Arono would treat the CO's final decision "as an anticipatory breach of the lease agreement." Pl.App. at 6–7. Arono also reiterated its challenge to the government's position and that the anticipated rent for the duration of the lease was $310,458.14. In addition, the letter demands that the CO take final action and retract her final decision, and that GSA honor its contractual obligation. Arono amended its claim on June 9, 1997, adding additional consequential damages due to the departure of two law firms that occupied space in the same development.[2]

On July 2, 1997, Arono's counsel sent a letter to John Ringhausen, agency counsel. This letter references the parties' telephone

---

2. The plaintiff claimed additional losses of $36,398.46 and $9,590.61 from the departure of these firms. One firm had a contractual right to

terminate its lease if SSA, the anchor tenant in the plaza, moved out while the other law firm tenant had no such right.

conversation of June 30, 1997 and states that, during that conversation, Mr. Ringhausen inquired about the legal authority for Arono's claim regarding the two law firm tenants. The letter offers support for Arono's claims, arguing that the departure of the law firms was a foreseeable consequence of the government's breach. In a letter dated July 11, 1997, also addressed to Mr. Ringhausen, Mr. Fromknecht represented that in a prior conversation, Mr. Ringhausen stated that he would contact the contracting officer regarding settlement of the claim. Mr. Fromknecht stated and that he wished to be advised of the status of those discussions. The July 11, 1997 letter also states that Arono had requested that preparations be initiated for litigation if settlement negotiations were not ongoing.

On July 29, 1997, Mr. Fromknecht sent a letter to the contracting officer proposing a settlement concerning the government's rental obligations and possible mitigation of damages through the re-let of the premises. In the letter, Mr. Fromknecht requested that Ms. Burns contact him to discuss the government's position once she had an opportunity to discuss the matter with agency counsel. Mr. Fromknecht also gave Ms. Burns a deadline of August 12, 1997 for responding to Arono's amended claim.

On July 31, 1997, Mr. Fromknecht sent a letter to Ms. Burns accepting her counteroffer to modify the lease agreement between the parties. In this letter, Mr. Fromknecht sets forth his understanding that SSA would probably relocate between November, 1997 and March, 1998, and that during this interim period, the government would pay rent in accordance with the original lease contract. In response to Mr. Fromknecht's July 29 and 31, 1997 letters, Mr. Ringhausen, agency counsel, sent a letter to Mr. Fromknecht on August 26, 1997, stating that the contracting officer had expressed surprise upon receipt of Mr. Fromknecht's July 31, 1997 letter since the government had not intended to make a counteroffer. In this letter, Mr. Ringhausen also stated that any modifications to the contract would have to be in writing and signed by both parties. Mr. Ringhausen also pointed out that the terms

presented in Mr. Fromknecht's July 31, 1997 letter did not represent a settlement since the terms did not require concessions on the part of Arono as the original lease already required Arono to perform some of the obligations dictated. Finally, however, Mr. Ringhausen proposed a settlement offer on behalf of SSA concerning rental payments, the government's relocation, and other lease obligations.

On September 8, 1997, Mr. Fromknecht sent a letter to Mr. Ringhausen stating that Arono had reached the conclusion that the government was conducting the negotiations in bad faith. The letter further states that not only would Arono reject Mr. Ringhausen's August 26, 1997 offer, but that Arono would also seek relief in this court. Mr. Fromknecht again opined that he believed it would be in the best interest of both parties if a final decision on Arono's amended claim were rendered. Mr. Ringhausen responded to the September 8, 1997 letter in an October 3, 1997 letter stating that the August 26, 1997 letter was an offer submitted on behalf of GSA and that if Arono had agreed to the terms, the government would have drafted a supplemental lease agreement. He also stated that if Arono would like the government to provide such a draft, it would do so. Mr. Ringhausen denied Mr. Fromknecht's assertion that the government was acting in bad faith, noting Arono's apparent refusal to submit a counteroffer implied that Arono did not wish to settle the matter. Mr. Ringhausen closed the letter by stating that GSA would "provide a decision within the next two weeks. If your client decides to submit a counter offer, we will consider same regardless of timing." Pl.App. at 58. On October 13, 1997, Mr. Fromknecht sent a letter to Mr. Ringhausen proposing a counteroffer. In this letter, Mr. Fromknecht also stated that he needed to know when SSA would vacate the property and requested that the government continue to prepare its response to Arono's amended claim. The letter assures Mr. Ringhausen that Arono would not file suit unless and until settlement negotiations reached an impasse.

Mr. Ringhausen sent a letter to Mr. Fromknecht on October 22, 1997, explaining,

in detail, the reasons the contracting officer found it necessary to terminate the lease. The letter also addresses Arono's amended claim and states that the government had found no documentation regarding any efforts to mitigate damages, noting that in the parties' telephone conversations, Mr. Fromknecht had recognized Arono's obligation to mitigate damages. The letter also noted Mr. Ringhausen's agreement that the matter should be settled but stated that Arono appeared to be unwilling to compromise its claim. In conclusion, agency counsel rejected Arono's counteroffer and proposed another offer of settlement.

On October 27, 1997, the contracting officer informed Arono that SSA would vacate the premises on November 15, 1997 and continue to pay rent at the current rate until the parties resolved the buyout issue. The letter notes that GSA's counsel was negotiating with Arono's counsel regarding the buyout issue. The contracting officer made no reference to her February 3, 1997 final decision or to any of Arono's claims. However, the letter states that the government "looks forward to an amiable resolution to this problem." Pl.App. at 69. Mr. Fromknecht contacted Mr. Ringhausen on October 28, 1997, requesting a firm date by which the government would vacate the premises. On October 31, 1997, in response to GSA's October 22, 1997 letter and counteroffer, Mr. Fromknecht made another counteroffer.

On January 12, 1998, the contracting officer sent a letter informing Arono that effective November 16, 1997, rent had been terminated on the lease contract and that the termination was based on the CO's February 3, 1997 final decision.[3] On May 6, 1998, Roderick O'Shea, President of Arono, executed a Second Amended Contractor Claim in response to the contracting officer's February 3, 1997 final decision. As with Arono's other claims, the contractor's second amended claim challenges the government's termination for default, sets forth the anticipatory rent for the duration of the lease, and demands a final decision "requiring the Government to recede from its prior conduct and

honor its lease obligations or pay the amount claimed." Pl.App. at 75–76. In his supplemental affidavit, Mr. Fromknecht stated that he served the Second Amended Contractor's Claim on May 13, 1998, in response to the contracting officer's May 7, 1998 letter. *Id.* at 102, ¶ 22–23. The contracting officer's May 7, 1998 letter informs Arono that it had recently come to the government's attention that a computer mistake caused the government to overpay Arono in rent and requests that Arono submit a check to the government for the overpayments. Arono's second amended claim did not address the government's assertion that it had overpaid Arono in rent. The contracting officer never issued a final decision on Arono's claims. No oral argument was held in this matter.

## II. Procedural History

On September 3, 1998, Arono filed a complaint in this court. Count I of Arono's complaint essentially challenges the government's decision to terminate its contract with Arono; contests the government's assertion that there was a constructive eviction; and alleges that the government breached its contract by abandoning the premises and failing to pay the agreed upon rent without legal justification or excuse. In connection with this claim, Arono seeks compensation, including damages and special damages. Arono, in Count II, seeks a declaratory judgment declaring that its actions did not constitute constructive eviction and that the government is responsible for all payments due under the lease contract. On October 29, 1998, defendant filed a motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction, contending that plaintiff failed to comply with the CDA by filing its complaint in this court more than twelve months after plaintiff received the contracting officer's final decision. In its response dated December 14, 1998, plaintiff maintains that the contracting officer's final decision of February 3, 1997 was either reconsidered or its finality was "suspended" and that the twelve-month statute of limitations was equitably tolled by the government's conduct and

---

3. The actual date on this letter is January 12, 1997. However, the parties do not dispute that this letter was misdated and the proper date is January 12, 1998.

representations. On December 17, 1998, defendant filed a reply to plaintiff's response, disputing plaintiff's contentions.

## DISCUSSION

### I. Motion to Dismiss for Lack of Jurisdiction—RCFC 12(b)(1)

Jurisdiction may be challenged by the parties or by the court on its own motion at any time, and if jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3). In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction, this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). Nonetheless, the non-movant bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Cubic Defense Sys., Inc. v. United States*, 45 Fed.Cl. 239, 245 (1999) (citing *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed.Cir.1993); *Reynolds*, 846 F.2d at 748; *Maniere v. United States*, 31 Fed.Cl. 410, 413 (1994)). Moreover, although a decision on a motion to dismiss for lack of jurisdiction is not a judgment on the merits, *Mark Smith Constr. Co. v. United States*, 10 Cl.Ct. 540, 541 (1986), where the moving party attacks the truthfulness of the non-moving party's factual assertions, the court will not presume these facts are true, and the court will determine for itself the merits of the jurisdictional claims. *Reynolds*, 846 F.2d at 747; *Maniere*, 31 Fed.Cl. at 414. The court may make any factual findings necessary to adjudicate this motion, including findings on matters not raised in the pleadings. *Indium Corp. of Am. v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986).

The Tucker Act delineates this court's jurisdiction. 28 U.S.C. § 1491 (1994). The Tucker Act does not create a substantive right to recover money damages in this court; rather, it allows recovery for claims founded on the Constitution, an act of Congress, regulation promulgated by the executive department, or any express or implied contract with the United States. 28 U.S.C. § 1491(a)(1); *Ky. Bridge & Dam, Inc. v. United States*, 42 Fed.Cl. 501, 516 (1998) (citing *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc*), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984)). In the instant matter, Arono asserts jurisdiction under the CDA, which applies to "any express or implied contract ... entered into by an executive agency." 41 U.S.C. § 602(a) (1994). It is undisputed that Arono entered into an express contract with an executive agency. Nonetheless, a plaintiff must also adhere to the procedural requirements of the CDA for this court to assume jurisdiction of its claim. *Scan–Tech Sec., L.P. v. United States*, 46 Fed.Cl. 326, 330 (2000) (citing *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338–39 (Fed.Cir.1983)). Thus, this court only has jurisdiction over a CDA action if, among other things, a plaintiff brings the action within twelve months of receipt of the contracting officer's final decision. 41 U.S.C. § 609(a)(3) (1994).

### II. The contracting officer recognized and reviewed Arono's request for reconsideration of the default termination decision thus suspending the finality of the contracting officer's February 3, 1997 decision.

Defendant suggests that plaintiff's complaint is beyond the purview of this court's jurisdiction because plaintiff filed its complaint on September 3, 1998, more than one year after the contracting officer issued her final decision terminating the lease for default, and therefore, beyond the applicable

twelve-month statutory appeal period set forth in the CDA, 41 U.S.C. § 609(a)(3). Plaintiff rejoins, contending that the contracting officer reconsidered her February 3, 1997 final decision; hence, suspending the finality of the decision until either October 27, 1997 or January 12, 1998, based upon two letters plaintiff received from the contracting officer. Consequently, plaintiff asserts that it filed its September 3, 1998 complaint within the twelve-month period a plaintiff must file an appeal under the CDA. Not so, says defendant. Defendant maintains that the contracting officer did not reconsider her final decision and thus, the statute of limitations commenced with the CO's February 3, 1997 decision and continued to run, without interruption. This court agrees with plaintiff.

■ Defendant is correct in its assertion that a termination for default is a government claim that triggers the twelve-month statutory appeal period. *Malone v. United States,* 849 F.2d 1441, 1443–45 (Fed.Cir. 1988); *K & S Constr. v. United States,* 35 Fed.Cl. 270, 274 (1996), *aff'd,* 121 F.3d 727 (Fed.Cir.1997) (Table). Thus, the submission of additional claims concerning the default termination decision is not a prerequisite to filing a complaint in this court. *See K & S Constr.,* 35 Fed.Cl. at 274–75. However, it is well-established that " 'an administrative agency may reconsider its own decisions.' " *Summit Contractors v. United States,* 15 Cl. Ct. 806, 808 (1988) (quoting *United States v. Sioux Tribe,* 222 Ct.Cl. 421, 435, 616 F.2d 485, 493 (1980)). Where a plaintiff timely submits a request for reconsideration, the time for appeal under the CDA does not commence until the disposition of the request for reconsideration because "such a request suspends the finality of the decision pending a ruling on the application ..." *Vepco of Sarasota, Inc. v. United States,* 26 Cl.Ct. 639, 645 (1992), *aff'd,* 6 F.3d 786 (Fed.Cir.1993) (internal quotations omitted) (quoting *Precision Piping, Inc. v. United States,* 230 Ct.Cl. 741, 743 (1982) (quoting *Dayley v. United States,* 169 Ct.Cl. 305, 309 (1965))). Nevertheless, a plaintiff's submission of claims to the contracting officer does not, *per se,* amount to a timely request for reconsideration or toll the statute of limitations. *K & S*

*Constr.,* 35 Fed.Cl. at 276 (finding that the plaintiff's submission of claims nearly ten months after the default decision was not a timely request for reconsideration) (citing *C.J. Langenfelder & Son, Inc. v. United States,* 169 Ct.Cl. 465, 472–73, 341 F.2d 600, 604–05 (1965)).

Plaintiff timely requested reconsideration of the contracting officer's termination for default decision. Arono submitted its first claim on April 15, 1997, a little over two months after the contracting officer issued her final decision. This claim disputed the underlying reasons the contracting officer set forth in support of her determination: that there was constructive eviction and thus, there was justification for a default termination. Although plaintiff's claim essentially set forth an assertion of anticipatory breach, as reflected in Arono's demand for anticipated rent for the duration of the lease, the claim further demanded that the contracting officer retract her final decision and honor the government's lease obligation. It was, in fact, plaintiff's closing demand that the CO retract her final decision. Such a demand demonstrates that Arono was requesting reconsideration of the CO's termination for default decision. This determination is not changed by the fact that Arono's second amended claim does not use language specifically demanding that the CO "retract" her final decision since the first claim alerted the CO to Arono's request for reconsideration. The second amended claim goes on to dispute the basis for the termination for default decision and demand that the government "recede from its prior conduct and honor its lease obligation ..." Pl.App. at 75–76. Such language also indicates that Arono was seeking reconsideration of the government's prior decision. Thus, with the court having determined that plaintiff sought reconsideration of the CO's termination for default, the remaining query is whether the contracting officer recognized and reviewed plaintiff's request for reconsideration of her February 3, 1997 final decision.

Defendant contends that the contracting officer merely reaffirmed her final decision by stating in the CO's January 12, 1998 letter to Arono that rent would be terminated ef-

fective November 16, 1997 and that the termination was based on her February 3, 1997 final decision. In support of its contention, defendant points to *Educators Assocs., Inc. v. United States,* 41 Fed.Cl. 811, 813–14 (1998) for the proposition that "a contracting officer's reaffirmation of a final decision does not constitute reconsideration of that decision." Def. Reply at 10. In *Educators,* after the plaintiff filed a claim challenging the termination for default and a later, separate, amended claim for additional compensation, the contracting officer's response, with regard to the termination for default, simply referred plaintiff to the termination notice and restated the appeal time periods. *Educators,* 41 Fed.Cl. at 813. The court found that it lacked jurisdiction over the plaintiff's claim regarding its challenge to the contract termination because the plaintiff failed to file suit during the appeal period which was governed, not by the contracting officer's second letter regarding termination, but by the contracting officer's first final decision. *Id.* at 814–15.

■ While the *Educators* decision may appear to have been based upon merely the termination for default and the fact that it was the date the plaintiff received this final decision that triggered the statutory appeal period, defendant overlooks a crucial factor in the decision. In *Educators,* the CO never acknowledged the plaintiff's request for reconsideration of the termination for default, nor did the CO ever directly or indirectly address that request. *Educators,* 41 Fed.Cl. at 813. Instead, the CO turned his attention to the separate amended claims for additional compensation. *Id.* It was these claims and not the request for reconsideration which the CO spent time processing and which he ultimately addressed (i.e., denied). *Id.* The CO in *Educators* agreed to, and in fact, did address plaintiff's amended claims for additional compensation. *Id.* The CO in *Educators* did not agree to, and in fact, did not reconsider the default termination decision. *Id.* Given that there is no evidence that the CO in *Educators* ever reviewed the plaintiff's request for reconsideration, it is not surprising that the court found the date of the original default decision was controlling rather than the CO's letter reaffirming the deci-

sion since, logically, without a review of the request, the finality of the earlier decision could not be suspended. Thus, the pertinent proposition of *Educators* with respect to the present case is that a reaffirmation of a final decision does not, *per se,* constitute reconsideration of that decision. Instead, it is the amount of time, if any, a contracting officer spends reviewing a plaintiff's request for reconsideration that suspends the finality of the decision regardless of whether that decision is ultimately reconsidered or reversed. *See Vepco,* 26 Cl.Ct. at 646. This court finds that it is necessary to review the circumstances surrounding a reaffirmation of a termination for default decision to make the requisite determination.

■ In the instant matter, unlike in *Educators,* the contracting officer acknowledged and extensively reviewed Arono's requests for reconsideration of the CO's February 3, 1997 final decision. This is made even more evident when one compares *Vepco of Sarasota, Inc. v. United States,* 26 Cl.Ct. 639 (1992), *aff'd,* 6 F.3d 786 (Table), to the present matter. In *Vepco,* the contracting officer issued two separate final decisions, one denying plaintiff recovery for removal of additional trees; the other denying recovery for providing electrical service. *Vepco,* 26 Cl.Ct. at 641. The court found that there were indications that Vepco "considered the claims unresolved," as demonstrated by Vepco's subsequent submission of claimed costs, among other things. *Id.* at 645. While Vepco's specific actions did not necessarily amount to a request for reconsideration, the court determined that "the Postal Services's subsequent willingness to review the claims ... reveal[ed] that at some point the Postal Service recognized that plaintiff had requested reconsideration of the contracting officer's decisions." *Id.* Although the CO and the contracting officer's representative denied Vepco's assertion that the CO agreed to reconsider the final decisions, the court found the architect and engineer's ("A & E's") field reports and the CO's eventual review of the decisions particularly persuasive. The A & E's field reports revealed "that a meeting would be held to resolve the tree removal issue," the contracting officer "would obtain

an additional opinion to substantiate his decision on the electrical service claim, and that plaintiff would be 'advised of the latest decision' on the electrical service claim." *Id.* They also stated that the contracting officer would review the tree removal and electrical service claims with the CO and that the CO would make a decision on the claims. *Id.* The A & E's field reports were supported by a letter from the CO stating that the decisions on the claims had been reviewed and would not be reconsidered due to the lack of new evidence. *Id.* The court determined that if the government had considered the previous decisions to be definitive, "it should have refused to review the decisions." *Id.* at 646. Furthermore, as previously discussed, the court stated that it was not pertinent that the CO stated that his earlier decisions would not be reconsidered since time spent reviewing the request suspended the finality of the decisions. *Id.*

The court's analysis in *Vepco* applies to the instant matter, despite defendant's argument to the contrary. Defendant maintains that *Vepco* does not apply in this instance because "[n]othing in the exchange of correspondence or the interactions between the parties could have led Arono to reasonably believe that the contracting officer had reconsidered her decision." Def. Reply at 11. In support of this contention, defendant draws the court's attention to the CO's October 27, 1997 letter to Arono, and notes that the contracting officer did not refer to her final decision in this letter. Defendant also points out that the CO did not submit a written settlement proposal for consideration by plaintiff although government counsel put Arono on notice that any settlement between the parties or modification of the lease agreement was required to be in writing and signed by both parties. The government also submits that the parties' engagement in settlement discussions between counsel for the parties is not proof that the contracting officer had reconsidered her final decision. Lastly, defendant references Arono's second amended claim, noting that Arono did not assert that the matter had been settled or that the contracting officer had reconsidered her final decision.

The court need not look toward the parties' settlement negotiations to discern whether the contracting officer acknowledged and reviewed plaintiff's request for reconsideration of the termination for default decision. In her October 27, 1997 letter to Arono, the contracting officer states:

> Rent will continue at the current rate until such time as the buyout issue is resolved. With regard to the buyout issue, GSA's legal counsel continues to negotiate with the Lessor's attorney, Mr. Fromknect [sic]. A counter offer was sent to Mr. Fromknect [sic] as recently as October 22, 1997. We look forward to an amiable resolution to this problem.

Pl.App. at 69. Although the term "buyout issue" does not directly refer to the contracting officer's February 3, 1997 final decision and its meaning is not specified, it is implicit that the CO is referring to plaintiff's claim for anticipatory breach and rent. Throughout the negotiations between the parties' counsel, anticipatory breach and rent were the exclusive subject matters. For example, in the October 22, 1997 letter which the contracting officer references with regard to a counteroffer, government counsel stated:

> We have received your letter dated October 13, 1997, with a counter offer. Your offer has GSA making a lump sum payment of $180,000 on or before February 1, 1998. On February 1, 1998, there is less than two years left of the lease term. Annual rent is $97,178.16. This yields a total rent for two full years of $194,356.32. Your client's offer to settle at $180,000 is certainly a modest concession. It also fails to consider the possibility that your client may lease the premises or otherwise make an effort to mitigate damages .... As an alternative GSA would be willing to make a lump sum payment to your client of one half of the total rental amount, reduced for services, through January 22, 2000, payable at the time we vacate.

Pl.App. at 62–63. This counteroffer addresses the amount of rent payable as a result of the termination of the lease as does plaintiff's claim of anticipatory breach and rent. The contracting officer's term "buyout issue" obviously refers to the counteroffer's proposal

of a lump sum payment of rent and is thus, merely a convenient description used by the contracting officer rather than a deviation from the subject matter counsel had been negotiating prior to the CO's October 27, 1997 letter.

In seeking a resolution to the buyout issue (plaintiff's claim for anticipatory rent), the contracting officer would have to review her default termination decision. Arono's claim for anticipatory rent was based upon its disagreement that there had been a constructive eviction, the basis of the government's termination of the lease for default. Therefore, to determine whether there would be any justification to resolve the rent claim and in what manner, the contracting officer would also have had to review the basis of her termination for default. In doing so, the CO would also, by definition, have to recognize Arono's request for reconsideration of the termination for default. *See K & S Constr.*, 35 Fed.Cl. at 276 (finding that the plaintiff's claims were implicitly requests for reconsideration where the claims could not succeed unless the final decision was undone). Because the resolution of Arono's anticipatory breach/rent claim is intertwined with its challenge to the government's default termination decision and its demand for reconsideration of that final decision, the court finds that although the CO did not explicitly refer to her February 3, 1997 final decision in the October 27, 1997 letter, her acknowledgment that she wanted to resolve the buyout issue, i.e., rent claim, demonstrates that not only did the contracting officer acknowledge Arono's request for reconsideration of the termination for default, but also that the CO was willing to review Arono's request and, in fact, was in the process of reviewing the request.

Consequently, it is of little moment that the contracting officer's January 12, 1998 letter to Arono ultimately reaffirmed the February 3, 1997 final decision in stating that rent was terminated effective November 16, 1997, based upon the contracting officer's February 3, 1997 decision. As stated, *supra*, it is irrelevant whether the contracting officer ultimately reverses or affirms a final decision; it is the time spent reviewing the request for reconsideration that suspends the finality of a final decision. *See Vepco*, 26

Cl.Ct. at 646. As such, this court finds that inasmuch as the contracting officer's October 27, 1997 letter shows that the contracting officer spent time reviewing Arono's request for reconsideration, the finality of the February 3, 1997 decision was suspended until the disposition of this request.

Plaintiff suggests that the finality of the final decision was suspended until either October 27, 1997 or January 12, 1998, based upon the contracting officer's letters to Arono. This court finds that the contracting officer's final decision was suspended until January 12, 1998. While the October 27, 1997 letter indicates that the CO was considering plaintiff's request, the January 12, 1998 letter demonstrates that the CO came to a definitive conclusion in the matter to reaffirm her February 3, 1997 decision and to cease rent, effective a date certain. Although plaintiff submitted a second amended claim after the contracting officer's January 12, 1998 letter, it does not affect the contracting officer's prior actions with regard to plaintiff's request for reconsideration. Regardless of whether plaintiff, at that time, understood that its request had been considered, the contracting officer's actions stand separate and demonstrate the contracting officer's intentions.

In light of the above, this court concludes that since Arono submitted its claim to the court on September 3, 1998, within a twelve-month period following the contracting officer's January 12, 1998 letter, this court has jurisdiction over plaintiff's complaint in accordance with the CDA, 41 U.S.C. § 609(a)(3). Inasmuch as the court has found that it has jurisdiction over this matter, this court need not reach the inquiry of whether the government's actions equitably tolled the statute of limitations under the CDA.

### CONCLUSION

Accordingly, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss plaintiff's claim alleging breach of contract and challenging the contracting officer's default termination decision based upon constructive eviction is **DENIED**.

(2) In light of the court's holding, this court need not address the merits of defendant's Motion to Stay Discovery Pending the Court's Resolution of Defendant's Motion to Dismiss; defendant's Motion to Stay Discovery is therefore **DENIED.**

(3) Given the court's disposition of defendant's Motion to Dismiss, the court **GRANTS**, in part, defendant's Motion for Enlargement of Time of 60 Days After Notice of the Court's Action on Defendant's Motion to Dismiss to File Answer to Plaintiff's Complaint. In light of the time that has elapsed since the filing of defendant's Motion to Dismiss, and plaintiff's opposition to a 60 day enlargement of time, but agreement to a 30 day enlargement of time, this court **GRANTS** defendant an enlargement of time of 45 days in which to file an answer to plaintiff's complaint. Defendant shall **FILE** its **ANSWER** to plaintiff's complaint on or before **July 30, 2001.**

(4) Each party shall bear its own costs.